BEHN, MEYER & COMPANY, LIMITED, *v.* MILLER, AS ALIEN PROPERTY CUSTODIAN OF THE UNITED STATES, ET AL.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 343. Argued November 24, 1924.—Decided January 5, 1925.

1. A corporation organized in a British colony, which had never been a resident of, nor done business within, any nation at war with the United States since Apil 6, 1917, or ally of such nation,

was neither an enemy nor ally of an enemy within the meaning of the Trading with the Enemy Act of October 6, 1917, c. 106, 40 Stat. 411; and was entitled under § 9 of the act to recover by suit the proceeds of its property, unlawfully seized by the Alien Property Custodian.   P. 471.

2. Amendments added to the Trading with the Enemy Act since the Armistice by Acts of 1920 and 1923—§ 9 (b) pars. 6 and 11; § 9 (c),—authorized restoration or suit for recovery of property seized by the Alien Property Cusodian where the President shall determine that the owner was at time of seizure a corporation incorporated within any country other than the United States and was and remains entirely owned by subjects or citizens of nations, states, etc., other than Germany, Austria, Hungary or Austria-Hungary, or a corporation organized or incorporated within any country other than these last enumerated, the control of which, or more than 50% of the interest or voting power in which, was, at the time of such seizure, and remains, vested in citizens or subjects of other nations, states, etc.—*Construed* as not intended to withdraw the right of a corporation, never " enemy or ally of enemy," to recover property unlawfully seized during the war when a majority of its shareholders were Germans. *Id.*

3. Section 7 (c) of the Trading with the Enemy Act, in authorizing seizure of property held " on account of, or on behalf of, or for the benefit of an enemy or ally of enemy," was not intended to empower the President to seize the property of a non-enemy corporation merely because of enemy stockholding interests therein. P. 472.

54 App. D. C. 225; 296 Fed. 1002, reversed.

APPEAL from a decree of the Court of Appeals of the District of Columbia affirming a decree of the Supreme Court of the District which dismissed on motion the appellant's bill against the Alien Property Custodian and the Treasurer of the United States, to recover the proceeds held by the latter, of property unlawfully seized by the former.[1]

---

[1] On November 24, 1924, *Mr. Marion Butler*, *Mr. John W. Clifton* and *Mr. Henry D. Green*, on behalf of Lazarus G. Joseph, as Receiver of Behn, Meyer & Company, Limited, in the Philippine Islands, applied for leave to intervene. The application was denied, on the same day, before the oral argument of the case was begun.

*Mr. William D. Guthrie,* with whom *Mr. Isidor J. Kresel* and *Mr. Bernard Hershkopf* were on the brief, for appellant.

*Mr. Merrill E. Otis,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for appellees.

The effect of amended § 9 (b), par. 6, is to prohibit the return of the property of such corporations as are not therein described, if any portion of their stock was enemy-owned.

The application of the section is not restricted to " enemy " corporations. The words are " a corporation incorporated within any country." Moreover, the application of subsec. (b) is not only to such property of enemies or allies of enemies as has been seized, but " in respect of all money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder."

Section 9 is a whole. It was enacted as a whole at the time of each of the amendments, that of 1920 and that of 1923. It should be construed as a whole, each part in the light of and as modified by other parts so as to achieve an harmonious interpretation of the several parts. *United States* v. *Landram,* 118 U. S. 81; *Bryant Co.* v. *New York Steam Fitting Co.,* 235 U. S. 327; *Market Co.* v. *Hoffman,* 101 U. S. 112; *Peck* v. *Jenness,* 7 How. 612. No principle of statutory construction can justify the contention that subsec. (a) of § 9 is to be considered altogether apart from what follows it and with no effect given to the limitations imposed upon subsec. (a) by the remaining language of § 9.

If the contention is sound to the effect that subsec. (a) and § 9 must be taken without regard to the rest of the section, then subsec. (e) becomes of no effect whatsoever.

The appellant was an ·" enemy " within the meaning of the Trading with the Enemy Act.

We must concede, of course, that appellant was not such a corporation as subdiv. (a) of § 2 expressly describes, since it was neither incorporated within an enemy country nor was it doing business within such territory. But a majority of its stockholders were enemies. It is possible that every share of stock save one was enemy owned.

Section 2 defines as an "enemy" "any individual, partnership, or other body of individuals, of any nationality, resident within the territory . . . of any nation . . . with which the United States is at war." It will scarcely be contended that this language (and all other language in the Act) is not to be liberally construed in favor of upholding the power of the Government to do everything regarded by the executive as necessary in the prosecution of a war. But in a very real sense, if not in a strictly technical sense, a corporation is but a "body of individuals." Will the Court say, keeping in view the character of this act as a war measure, that by reason of somewhat attenuated technical distinctions the executive branch of the Government engaged in the prosecution of a war could not, through the thin corporation covering, strike at the "enemies" underneath—the "body of individuals" who were within even the letter of the definition the "enemies" of the nation?

This Court has often looked through the corporation to the individuals composing it. *Bank of the United States* v. *Deveaux*, 5 Cr. 61; *McKinley* v. *Wheeler*, 130 U. S. 630; *United States* v. *Northwestern Express Co.*, 164 U. S. 686.

That Congress intended that the corporation shell should be pierced is apparent from the amendment of June 5, 1920, § 9 (b), par. 6, and from that of March 4, 1923, § 9 (b), par. 11.

Further light is to be had from the Joint Resolution terminating the war, July 2, 1921, c. 40, § 5; 42 Stat. 105,

which contemplated the retention of such property as belonged when seized to German and other enemy nationals whether in their individual or corporate capacities. Property which has come under the control of the United States " from any source . . . whatsoever " is to be retained. When this resolution was passed the property of this appellant and others in the same situation had been taken and was under the control of the United States and was therefore a part of the property contemplated by the act.

The war powers of the Executive, having their origin in the Constitution, embraced the right of temporary seizure. No duty was incumbent on the Executive to inquire of Congress who were enemies, or whether those who in their individual capacities were concededly enemies were also enemies in a corporate capacity. See *Steamship St. Tudno,* 5 Lloyds Prize Cas. 198, (1916 Probate, 291); *The Michigan,* 5 Lloyds Prize Cas. 42; *Daimler Co.* v. *Continental Tyre & Rubber Co.,* 2 A. C. [1916] 307.

The only provision in the entire act for the taking over of enemy property by the Alien Property Custodian (except as to enemy-owned shares of stock in American corporations) was § 7, subdiv. (c). This provision authorized the taking over of the property of a corporation of a country other than the United States if, as here, a majority of its stock was enemy owned. Certainly, in a very real sense the property of a corporation may be said to be held " on account of, or on behalf of, or for the benefit of " its stockholders. The executive department construed this provision as authorizing the seizure of the property of a corporation a majority of whose stock was enemy owned. Moreover, throughout the act is indicated the intent of Congress that the Government should look beneath the corporate covering and consider whether the stockholders were enemies. See, for

examples, the first part of § 7, as to enemy stockholders in American corporations, and, also, pars. 6 and 11 of subsec. (b) of § 9, as amended.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Since December, 1905, the appellant, Behn, Meyer & Company, Limited, has been a corporation organized under the laws of The Straits Settlements, a crown colony of the United Kingdom of Great Britain and Ireland. It has never been a resident of nor has it done business within the territory of any nation at war with the United States since April 6, 1917, or an ally of such nation. Prior to February, 1918, under the supervision of Menzi, a stockholder and citizen of Switzerland, it carried on business in the Philippine Islands. During that month, and while subjects of Germany held most of its stock, the Alien Property Custodian, claiming authority under the Trading with the Enemy Act, seized and converted into cash the corporation's assets found in those Islands. The proceeds are held by him or by the Treasurer of the United States.

Alleging that its property had been improperly seized and the proceeds were being unjustly withheld, the Company brought suit to recover them in the Supreme Court, District of Columbia, July 28, 1922. Upon motion the trial court dismissed the petition, and the Court of Appeals affirmed the decree.

Following much consideration Congress passed the original Trading with the Enemy Act, approved October 6, 1917, c. 106, 40 Stat. 411. It is long (nineteen sections), rather complicated, and evinces the purpose to clothe the President with definitely restricted powers in respect of seizing property of those designated as enemies. It has been amended several times but has always contained the original provisions (§ 9) allowing recovery

of seized property which did not in fact belong to an enemy. " By § 9, as twice amended, any one, ' not an enemy or ally of enemy,' claiming any interest, right or title in any money or other property so sequestered and held may give notice of his claim and institute a suit in equity. . . . [The act] distinctly reserves to any claimant who is neither an enemy nor an ally of an enemy a right to assert and establish his claim by a suit in equity unembarrassed by the precedent executive determination. Not only so, but pending the suit, which the claimant may bring as promptly after the seizure as he chooses, the property is to be retained by the Custodian to abide the result and, if the claimant prevails, is to be forthwith returned to him. Thus there is provision for the return of property mistakenly sequestered; and we have no hesitation in pronouncing. it adequate, for it enables the claimant, as of right, to obtain a full hearing on his claim in a court having power to enforce it if found meritorious." *Stoehr* v. *Wallace,* 255 U. S. 239, 243, 246; *Central Union Trust Co.* v. *Garvan,* 254 U. S. 554; *Commercial Trust Co.* v. *Miller,* 262 U. S. 51.

Section 2, which has remained unchanged, declares that " person " shall include corporation or body 'politic and the word " enemy " shall be deemed to mean—

"(a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory.

"(b) The government of any nation with which the United States is at war, or any political or municipal sub-

division thereof, or any officer, official, agent, or agency thereof.

"(c)   Such other individuals, or body or class of individuals, as may be natives, citizens, or subjects of any nation with which the United States is at war, other than citizens of the United States, wherever resident or wherever doing business, as the President, if he shall find the safety of the United States or the successful prosecution of the war shall so require, may, by proclamation, include within the term ' enemy.' "

Also, the words " ally of enemy " shall be deemed to mean—

"(a)   Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation which is an ally of a nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of such ally nation, or incorporated within any country other than the United States and doing business within such territory.

"(b) The government of any nation which is an ally of a nation with which the United States is at war, or any political or municipal subdivision of such ally nation, or any officer, official, agent, or agency thereof.

"(c) Such other individuals, or body or class of individuals, as may be natives, citizens, or subjects of any nation which is an ally of a nation with which the United States is at war, other than citizens of the United States, wherever resident or wherever doing business, as the President, if he shall find the safety of the United States or the successful prosecution of the war shall so require, may, by proclamation, include within the term ' ally of enemy.' "

After prohibiting trade with, for or on account of any enemy or ally of enemy, and making sundry provisions

for licenses, appointment of an Alien Property Custodian, reports to him, etc., etc., the original act provided:

"Sec. 7(c). If the President shall so require, any money or other property owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of an enemy or ally of enemy not holding a license granted by the President hereunder, which the President after investigation shall determine is so owing or so belongs or is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian." [1]

"Sec. 9. That any person, not an enemy, or ally of enemy, claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian hereunder, and held by him or by the Treasurer of the United States   .   .   .   may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may, with the assent of the owner of said property and of all persons claiming any right, title, or interest therein, order the payment, conveyance, transfer, assignment or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States

---

[1] "Whether the objection would be good if it turned entirely on the words of § 7c, on which the plaintiff relies, we need not consider; for they obviously are qualified and explained by § 5, which very plainly enables the President to exercise his power under § 7c ' through such officer or officers as he shall direct.' By the orders already noticed the President directed that this power be exercised through the Alien Property Custodian. It therefore is as if the words relied on had been 'which the President, acting through the Alien Property Custodian, shall determine after investigation' is enemy-owned, etc. In short, a personal determination by the President is not required; he may act through the Custodian, and a determination by the latter is in effect the act of the President." *Stoehr* v. *Wallace*, 255 U. S. 239, 244, 245.

or of the interest therein to which the President shall determine said claimant is entitled. . . . If the President shall not so order within sixty days after the filing of such application, or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may, at any time before the expiration of six months [enlarged to eighteen months by the Act of December 21, 1921, c. 13, 42 Stat. 351] after the end of the war, institute a suit in equity *in the Supreme Court of the District of Columbia* [Act June 11, 1919, c. 6, 41 Stat. 35] or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed." . . .

Section 9 was materially amended by the Act of June 5, 1920, c. 241, 41 Stat. 977. The original section, quoted above, was reënacted as subsection (a). It provides for recovery when the seized property belonged to one not an " enemy or ally of enemy "—where the taking was in fact without warrant of law. Six subsections—(b), (c), (d), (e), (f) and (g)—were added. Subsection (b) permits recovery by some within the definition of " enemy " whose property had been lawfully seized. Each of its eight numbered paragraphs includes such persons. Subsection (c) and those parts of subsection (b) here specially important follow. All of subsection (b) is printed below.[2]

---

[2] Subsec. (b) In respect of all money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, if the President shall determine that the owner thereof at the time such money or other property was required to be so conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or at the time when it was voluntarily delivered to him or was seized by him was—

" Sec. 9, Subsec. (b) In respect of all money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, if the President shall determine that the owner thereof at the time such money or other property was required to be so conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or at the time when it was voluntarily delivered to him or was seized by him was—.   .   .

" Par. (6) A partnership, association, or other unincorporated body of individuals outside the United States,

---

(1) A citizen or subject of any nation or State or free city other than Germany or Austria or Hungary or Austria-Hungary, and is at the time of the return of such money or other property hereunder a citizen or subject of any such nation or State or free city; or

(2) A woman who at the time of her marriage was a subject or citizen of a nation which has remained neutral in the war, or of a nation which was associated with the United States in the prosecution of said war, and who prior to April 6, 1917, intermarried with a subject or citizen of Germany or Austria-Hungary and that the money or other property concerned was not acquired by such woman either directly or indirectly from any subject or citizen of Germany or Austria-Hungary; or

(3) A woman who at the time of her marriage was a citizen of the United States (said citizenship having been acquired by birth in the United States), and who prior to April 6, 1917, intermarried with a subject or citizen of Germany or Austria-Hungary, and that the money or other property concerned was not acquired by such woman either directly or indirectly from any subject or citizen of Germany or Austria-Hungary; or

(4) A citizen or subject of Germany or Austria or Hungary or Austria-Hungary and was, at the time of the severance of diplomatic relations between the United States and such nations, respectively, accredited to the United States as a diplomatic or consular officer of any such nation, or the wife or minor child of such officer, and that the money or other property concerned was within the territory of the United States by reason of the service of such officer in such capacity; or

or a corporation incorporated within any country other than the United States, and was entirely owned at such time by subjects or citizens of nations, States, or free cities other than Germany or Austria or Hungary or Austria-Hungary and is so owned at the time of the return of its money or other property hereunder; . . ."

"Then the President, without any application being made therefor, may order the payment, conveyance, transfer, assignment, or delivery of such money or other property held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine such per-

---

(5) A citizen or subject of Germany or Austria-Hungary, who by virtue of the provisions of sections 4067, 4068, 4069, and 4070 of the Revised Statutes, and of the proclamations and regulations thereunder, was transferred, after arrest, into the custody of the War Department of the United States for detention during the war and is at the time of the return of his money or other property hereunder living within the United States; or

(6) A partnership, association, or other unincorporated body of individuals outside the United States, or a corporation incorporated within any country other than the United States, and was entirely owned at such time by subjects or citizens of nations, States, or free cities other than Germany or Austria or Hungary or Austria-Hungary and is so owned at the time of the return of its money or other property hereunder; or

(7) The Government of Bulgaria or Turkey, or any political or municipal subdivision thereof; or

(8) The Government of Germany or Austria or Hungary or Austria-Hungary, and that the money or other property concerned was the diplomatic or consular property of such Government; or

(9) [Added by Act March 4, 1923.] An individual who was at such time a citizen or subject of Germany, Austria, Hungary, or Austria-Hungary, or who is not a citizen or subject of any nation, State, or free city, and that such money or other property, or the proceeds thereof, if the same has been converted, does not exceed in value the sum of $10,000, or although exceeding in value the sum of $10,000 is nevertheless susceptible of division, and the part thereof to be returned hereunder does not exceed in value the sum of $10,000: *Provided,* That an individual shall not be entitled, under

son entitled, either to the said owner or to the person by whom said property was conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian. . . ."

"Subsec. (c) Any person whose property the President is authorized to return under the provisions of subsection (b) hereof may file notice of claim for the return of such property, as provided in subsection (a) hereof, and thereafter may make application to the President for allowance of such claim and/or may institute suit in equity to recover such property, as provided in said subsection, and with like effect.  The Presi-

---

this paragraph, to the return of any money or other property owned by a partnership, association, unincorporated body of individuals, or corporation at the time it was conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian, or seized by him hereunder; or

(10) [Added by Act March 4, 1923.] A partnership, association, other unincorporated body of individuals, or corporation, and that it is not otherwise entitled to the return of its money or other property, or any part thereof, under this section, and that such money or other property, or the proceeds thereof, if the same has been converted, does not exceed in value the sum of $10,000, or although exceeding in value the sum of $10,000, is nevertheless susceptible of division, and the part thereof to be returned hereunder does not exceed in value the sum of $10,000: *Provided,* That no insurance partnership, association, or corporation, against which any claim or claims may be filed by any citizen of the United States with the Alien Property Custodian within sixty days after the time this paragraph takes effect, whether such claim appears to be barred by the statute of limitations or not, shall be entitled to avail itself of the provisions of this paragraph until such claim or claims are satisfied; or

(11) [Added by Act March 4, 1923.] A partnership, association, or other unincorporated body of individuals, having its principal place of business within any country other than Germany, Austria, Hungary, or Austria-Hungary, or a corporation, organized or incorporated within any country other than Germany, Austria, Hungary, or Austria-Hungary, and that the control of, or more than 50 per centum of the interests or voting power in, any such partnership,

dent or the court, as the case may be, may make the same determinations with respect to citizenship and other relevant facts that the President is authorized to make under the provisions of subsection (b) hereof."

Section 9 was further amended by the Act of March 4, 1923, c. 285, 42 Stat. 1511, 1512, 1513, by adding to subsection (b) three new paragraphs—9, 10 and 11. Each of these empowers certain persons to recover property or funds held by the Alien Property Custodian and is broad enough to include some always within the general definition of "enemy." Paragraph 11 follows—

"Subsec. b, par. (11) A partnership, association, or other unincorporated body of individuals, having its principal place of business within any country other than Germany, Austria, Hungary, or Austria-Hungary, or a corporation, organized or incorporated within any country other than Germany, Austria, Hungary, or Austria-Hungary, and that the control of, or more than 50 per

---

association, other unincorporated body of individuals, or corporation, was at such time, and is at the time of the return of any money or other property, vested in citizens or subjects of nations, States, or free cities other than Germany, Austria, Hungary, or Austria-Hungary: *Provided, however,* That this subsection shall not affect any rights which any citizen or subject may have under paragraph (1) of this subsection;—

Then the President, without any application being made therefor, may order the payment, conveyance, transfer, assignment, or delivery of such money or other property held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine such person entitled, either to the said owner or to the person by whom said property was conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian: . . . *Provided further, however,* That except as herein provided no such action by the President shall bar any person from the prosecution of any suit at law or in equity to establish any right, title, or interest which he may have therein.

centum of the interests or voting power in, any such partnership, association, other unincorporated body of individuals, or corporation, was at such time, and is at the time of the return of any money or other property, vested in citizens or subjects of nations, States, or free cities other than Germany, Austria, Hungary, or Austria-Hungary: *Provided, however,* That this subsection shall not affect any rights which any citizen or subject may have under paragraph (1) of this subsection."

Appellant maintains that it was never an enemy or ally of enemy within the statutory definitions; that only property of persons so described was properly subject to seizure; and, as it was neither enemy nor ally of enemy, the provisions of § 9, subsection (a) (always part of the act) in plain terms permit it to recover unlawfully seized property or the proceeds.

On the other side the insistence is that subsection (c) of § 7 permitted seizure of appellant's property because held " on account of, or on behalf of, or for the benefit of " stockholders, the majority of whom were enemy subjects of Germany. Further, that although appellant's property may have been taken originally without authority, return of it is now impliedly prohibited by subsection (b) of § 9, as amended (Acts of 1920 and 1923), since this subsection applies in terms to " *all* money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States," whether taken lawfully or no. Paragraphs 6 and 11 are specially relied upon, and it is said that they specify the only classes of corporations now permitted to recover and do not include appellant.

We think subsection (a) of § 9 gives now, as the same words gave from the first, the right of recovery to any person never " an enemy or ally of enemy," within the statutory definitions. *Stoehr* v. *Wallace, supra.* The

contrary view, urged by appellees, would greatly qualify, perhaps delete, this subsection, and would place the United States in the unenviable position of positively refusing, after hostilities had ended, to give up property which had been taken contrary to their own laws. It would require very clear words to convince us that Congress intended any such thing.

Subsection (b) adds to those allowed to recover from the first a considerable number always within the definition of "enemy" and affords to them the measure of relief which Congress deemed proper long after peace had been actually restored. And this accords with the spirit of the provision in § 12—"After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the Alien Property Custodian or deposited in the United States Treasury, shall be settled as Congress shall direct."

Before its passage the original Trading with the Enemy Act was considered in the light of difficulties certain to follow disregard of corporate identity and efforts to fix the status of corporations as enemy or not according to the nationality of stockholders. These had been plainly indicated by the diverse opinions in *Daimler Co.* v. *Continental Tyre & Rubber Co.*, 2 A. C. [1916] 307, decided June 30, 1916.

Section 7, subsection (c), was never intended, we think, to empower the President to seize corporate property merely because of enemy stockholders' interests therein. Corporations are brought within the carefully framed definitions (§ 2) of "enemy" and "ally of enemy" by the words—"Any corporation incorporated within such territory of any nation with which the United States is at war [or any nation which is an ally of such nation] or incorporated within any country other than the United States and doing business within such territory." And

we find no adequate support for the suggestion that Congress authorized the taking of property of other corporations because one or more stockholders were enemies. Logically carried out this view would have permitted the seizure of all property of companies incorporated by any associated power, e. g., Great Britain, solely because some German held one share of the many thousand. The result indicates that the premise is bad. What the President might do was plainly set down in well considered words.

The challenged decree must be reversed and the cause will be remanded to the Supreme Court of the District of Columbia for further proceedings in conformity with this opinion.

*Reversed.*