**BUDDEBERG v. SUTHERLAND, Alien Property Custodian et al.** •

(Court of Appeals of District of Columbia. Submitted October 8, 1926. Decided November 1, 1926.)

No. 4424.

War ⟨⟨⟩⟩12—Woman citizen, who married German subject after war, held not an· enemy warranting seizure of her property (Trading with the Enemy Act [Comp. St. §§ 3115½a–3115½j]).

Woman, who is citizen and resident, and who married German subject after conclusion of war *held* not an enemy or ally of an enemy within Trading with the Enemy Act (Comp. St. §§ 3115½a–3115½j), as would warrant seizure of her property, prior to conclusion of war, no part of which she acquired from any subject or citizen of an enemy country, under section 9 as amended by Act March 4, 1923 (Comp. St. § 3115½e).

Appeal from the Supreme Court of the District of Columbia.

Suit by Elsa Triebels Buddeberg against Howard Sutherland, as Alien Property Custodian, and Frank White as Treasurer of the United States. Decree dismissing tne bill, and plaintiff appeals. Reversed and remanded, with directions.

William Sabine, of Washington, D. C., for appellant.

D. H. Stanley, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. This appeal is from a final decree of the Supreme Court of the District of Columbia, dismissing appellant's bill for the recovery of certain property in the hands of defendants, Alien Property Custodian and the Treasurer of the United States, under the provision of section 9 of the Act of Congress, known as the Trading with the Enemy Act, as amended by 42 Stat. 1511 (Comp. St. § 3115½e). The parties have stipulated the facts, leaving only questions of law to be determined. By the stipulation, it appears that plaintiff was born in Philadelphia, Pa., March 1, 1891, a daughter of a resident citizen of the United States; that thereafter she resided in the United States, and that on May 11, 1920, she married Paul O. Buddeberg, a resident and subject of Germany. The property here sought to be recovered was the property of the plaintiff, and was seized by the Alien Property Custodian prior to her marriage, and no part of the property was acquired, either directly or indirectly, from any subject or citizen of Germany or Austria-Hungary, subsequent to January 1, 1917.

Paragraph 3 of subsection B, as amended March 4, 1923, provides for the return of property held by the Alien Property Custodian, if the owner, at the time of seizure was "a woman who at the time of her marriage was a citizen of the United States, and who prior to April 6, 1917, intermarried with a subject or citizen of Germany or Austria-Hungary, and that the money or other property, concerned was not acquired by such woman, either directly or indirectly, from any subject or citizen of Germany or Austria-Hungary subsequent to January 1, 1917; or who was a daughter of a resident citizen of the United States and herself a resident or former resident thereof, or the minor daughter or daughters of such woman, she being deceased,"

It is conceded that plaintiff was a daughter of a resident citizen of the United States, and that she herself was a resident and citizen thereof at the time of her marriage, but it is contended on the part of the government that plaintiff does not bring herself within the provisions of the statute, in that her marriage was not prior to April 6, 1917. It was on this theory that the court below dismissed the bill.

This case can be briefly disposed of by a reasonable and comprehensive interpretation of the clause of the statute here involved. It should be remembered that this statute was enacted in 1923, several years after the war had closed, when many technical questions involving the seizure and return of alien property had been passed upon by the courts. Congress unquestionably appreciated that a condition existed in relation to alien property which required further and more liberal legislation. The matter under consideration involved the rights of married women who had been citizens of the United States prior to their marriage to a return of their property which had been seized. It was remedial legislation.

Coming to the language of the statute, it first considers the case of a woman who at the time of her marriage was a citizen of the United States, and who was married prior to April 6, 1917, the date of the Declaration of War between the United States and Germany. As to such a woman, if, prior to her marriage to a subject or citizen of Germany or Austria-Hungary, she

was a citizen of the United States, and had not acquired the property seized from any subject or citizen of Germany or Austria-Hungary, she is entitled to a return of such property.

But that is not this case. Here the plaintiff, a citizen and resident of the United States, and the daughter of a citizen and resident of the United States, was not married to a German subject until May 11, 1920, long after the conclusion of the war. Her property was seized prior to that date, no part of which she had acquired, directly or indirectly, from any subject or citizen of Germany or Austria-Hungary, either prior or subsequent to January 1, 1917. She was at no time, therefore, either before or after her marriage, an enemy or ally of an enemy within the meaning of the Trading with the Enemy Act. Behn, Meyer & Co. v. Miller, 266 U. S. 457, 45 S. Ct. 165, 69 L. Ed. 374.

It cannot be conceived that Congress intended to justify the retention of property seized by the Alien Property Custodian from a person who, at the time of the seizure, was a full-fledged resident and citizen of the United States, who had no connection whatever with Germany, or German interests, and whose property seized was not acquired, directly or indirectly, from any person or source connected either with Germany or Austria-Hungary.

Congress, in the act in question, was extending the right of recovery to property lawfully seized, but here the property was unlawfully seized, a condition never within the contemplation of the Trading with the Enemy Act (Comp. St. §§ 3115½a–3115½j). Should the present amendment be construed as extending the provisions of the act to property unlawfully seized, the construction would operate to convert a remedial statute, intended to restore property lawfully seized to owners not heretofore recognized as entitled to this relief, into a restrictive statute extending the provisions of existing law, limited to property lawfully seized, to include property unlawfully seized.

Nowhere in the Trading with the Enemy Act or its amendments does Congress even intimate an intention to retain property unlawfully seized. Indeed subsection (a) of section 9 of the act, disclaims any intention of denying the right of recovery to a non-enemy claimant. In Behn, Meyer v. Miller, supra, a case less free from difficulty than the instant one, the court, considering the right to recover property unlawfully seized, said: "We think subsection (a) of section 9 gives now, as the same words gave from the first, the right of recovery to any person never 'an enemy or ally of enemy,' within the statutory definitions. Stoehr v. Wallace, supra [255 U. S. 239, 41 S. Ct. 293, 65 L. Ed. 604]. The contrary view, urged by appellees, would greatly qualify, perhaps delete, this subsection, and would place the United States in the unenviable position of positively refusing, after hostilities had ended, to give up property which had been taken contrary to their own laws. It would require very clear words to convince us that Congress intended any such thing."

Under the statement of facts, the act of seizure of plaintiff's property by defendants was unlawful from its inception; hence its retention is unlawful. It can be no more justified than could the seizure of the property of any other American citizen. Plaintiff's marriage to a German citizen, after the conclusion of peace between Germany and the United States, has no bearing whatever upon her right to the return of her property. This was a privilege she could exercise without in any respect jeopardizing her property interests. The property not being subject to seizure in the first instance, under any pretense of law, cannot now lawfully be retained.

The decree is reversed and the cause is remanded, with directions to enter a decree requiring the Alien Property Custodian and the Treasurer of the United States to return the property belonging to the plaintiff, as prayed for in her bill.