643

SUTHERLAND, Alien Property Custodian, et
al. v. BEHN, MEYER & CO., Limited.

BEHN, MEYER & CO., Limited, v. SUTHER-
LAND, Alien Property Custodian, et al.

Court of Appeals of District of Columbia.
Submitted May 6, 1929.   Decided
June 3, 1929.

Nos. 4760, 4761.

Thos. E. Rhodes, of Washington, D. C.,
for appellants.

Walter Bruce Howe and Chas. H. Brad-
ley, both of Washington, D. C., and William
D. Guthrie and Bernard Hershkopf, both of
New York City, for appellee.

Before MARTIN, Chief Justice, and
ROBB and VAN ORSDEL, Associate Jus-
tices.

MARTIN, Chief Justice.   These cases
were brought in the Supreme Court of the
District of Columbia under section 9 of the
Trading with the Enemy Act (50 USCA
Appendix § 9), to recover property seized
by the Alien Property Custodian.   They
were tried together in the lower court, and
appeals were taken in both cases.

It appears that Behn, Meyer & Co., Lim-
ited, is a corporation organized in the year
1905 under the laws of the Straits Settle-
ments, a British Crown Colony.   The com-
pany did a large business in the colony and
other places in the Far East as importers,
exporters, and shipping agents.   Among oth-
ers it maintained branch stations in the Phil-
ippine Islands.   In the year 1914, after the
World War broke out, the Governor of the
Straits Settlements made a finding that more
than one-third of the capital stock of the
company was owned by German nationals,
and that the company therefore was an alien
enemy under the colony law.   He thereupon
appointed liquidators under the Straits Set-
tlements Alien Enemy (Winding-Up) Ordi-
nance, whose duty it was "to wind up the
affairs of any trade carried on in the Colony"
by the company.   It was provided by the or-
dinances that the proceeds realized by the
winding-up of any company, after the set-
tlement of certain claims, should be paid by
the liquidators to the Custodian of Enemy
Property of the colony, to be held by him
subject to the provisions of the Trading with
the Enemy Ordinances; that the books, pa-
pers, accounts, and documents of the com-

pany should be dealt with in such manner as the Governor might direct; and that the Governor might make an order that such company if registered in the colony should be dissolved.

Pursuant to the winding-up orders, the affairs of the company in the Straits Settlements were closed out by the liquidators, but the shares of corporate stock of the company owned by the German nationals were not then seized as enemy property, nor did the Governor make any order for the dissolution of the corporation.

In the year 1918, war being flagrant between the United States and Germany, the Alien Property Custodian of this country determined that Behn, Meyer & Co., Limited, was an alien enemy because of the fact that a majority of its stockholders were German nationals. The Custodian accordingly seized the property of the corporation located in the Philippine Islands, having a value of nearly half a million dollars, and deposited the proceeds thereof with the Treasurer of the United States.

In the year 1921, certain stockholders of the company owning all but one-thirtieth of the capital stock thereof, including all of the officers of the company, held a meeting in due form, and appointed one Emil W. Martens as attorney in fact for the company, with authority to bring suit against the Alien Property Custodian in the courts of the United States under section 9 of the Trading with the Enemy Act, to recover the property seized by the Custodian in the Philippines, upon a claim that the company being a corporation organized in a British colony, and not having a residence or doing business in Germany or other enemy country, was not an alien enemy within the sense of the Trading with the Enemy Act.

In pursuance of this authority one of the suits involved herein was begun in the Supreme Court of the District of Columbia, in the name of Behn, Meyer & Company, Limited, by Emil W. Martens as its attorney in fact, against the Alien Property Custodian for the recovery of the proceeds of the seized property. A motion to dismiss the bill of complaint, upon grounds equivalent to a general demurrer, was filed by the Custodian. The issue thus made was finally passed upon by the Supreme Court of the United States. The court overruled the contention of the Custodian, and the cause was remanded. Behn, Meyer & Co., Limited, v. Miller, Alien Property Custodian, 266 U. S. 457, 45 S. Ct. 165, 69 L. Ed. 374.

On February 14, 1925, after the date of this decision, and while the cause as remanded was pending in the trial court, the shareholders of the corporation applied to the liquidators of the Straits Settlements for a surrender of the stock certificates representing their shares in the company and also the certificate books and share registers of the company, which were still in the possession of the Custodian of the colony. In response to this application the stock certificates and books were delivered to them by the liquidators.

Afterwards, to wit, on July 19, 1926, the liquidators brought the other of the two suits involved in this appeal in the Supreme Court of the District, in the name of Behn, Meyer & Company, Limited, against the Alien Property Custodian, to recover the same assets as were involved in the former cause, then still pending. It is now conceded that the liquidators as such possessed no authority to maintain a suit outside of the colony. Afterwards, however, on November 13, 1926, certain vesting orders were issued by the Governor in Council of the Straits Settlements, purporting to vest in the Custodian of Enemy Property of the colony all of the shares of stock owned by the German shareholders, for the purpose, as set out, of enforcing the charge reserved upon the property of German nationals within the colony, under the Orders in Council based upon the provisions of the Versailles Treaty. It is claimed that the Custodian of Enemy Property in the colony thereby became the legal owner of the shares comprising practically the entire capital stock of the corporation, and that the Custodian thereupon ratified and adopted the suit theretofore begun by the liquidators; and that the assets in controversy should be paid to the liquidators as representatives of the corporation acting by authority of the Custodian.

The issues made by the conflicting claims of Martens as attorney in fact for the corporation, and the liquidators acting by authority of the Custodian of Enemy Property of the Straits Settlements, together with the defense interposed by the Alien Property Custodian, were heard on evidence by the lower court. The court held that the assets in question had been erroneously seized by the Alien Property Custodian, and should be returned to the corporation by payment thereof to Emil W. Martens, as its attorney in fact.

The court held that the return of the stock certificates and register book to the original stockholders in 1925 amounted to a release of the shares by the Straits Custodian

from the charge provided for by the Clearing Office (Amendment) Ordinance, which purported to regulate the charging of German-owned property in the Straits Settlements. The ordinance provides, in part, "that any particular property rights or interests so charged may at any time be released by the Custodian acting under the general direction of the Governor in council from the charge so created." It is also provided that "no person shall, without the consent of the Custodian, transfer, part with or otherwise deal in any property, right or interest subject to the charge, and if he does so he shall be liable on summary conviction to a fine * * * or imprisonment. * ° * " The record is convincing to the effect that the Custodian authorized the liquidators to deliver the shares to the shareholders, with the undoubted understanding that they would be removed from the Straits Settlements; and the only reasonable explanation of this action is that it was intended that the property should be returned to the original owners free from the statutory charge. It must be assumed that this action was taken under the general direction of the Governor in council as required by the ordinance. "It is a rule of general application that 'where an act is done which can be done legally only after the performace of some prior act, proof of the later carries with it a presumption of the due performance of the prior act.'" American Ry. Exp. Co. v. Lindenburg, 260 U. S. 584, 589, 43 S. Ct. 206, 208 (67 L. Ed. 414). Moreover, it would have been a crime for the liquidators to deliver the certificates as aforesaid without the consent of the Custodian. In our opinion the appeal of the liquidators acting for the Straits Custodian was rightly overruled upon this ground.

We are of the opinion also that the vesting orders made by the Governor of the Straits Settlements after the liquidators had begun their suit, for the purpose of vesting the title to the shares then in litigation in the Straits Custodian, should not govern the court's decision herein. The validity of the orders is based upon the alleged situs of the shares at the time in the Straits Settlements. It is true that in general the situs of corporate stock is held to be within the state which created the corporation. But for the purpose of this case we believe that the Straits Settlements by that time had ceased to be the real situs of Behn, Meyer & Company, Limited, and had become a jurisdiction foreign to it. The corporation's affairs within the colony had been wound up, and it was no longer entitled either to own property or to carry on its corporate business therein; and this condition had continued for twelve years next preceding the date of the vesting orders. Even the certificates representing the corporate stock of the company had been handed over to the stockholders to be removed from the colony. Moreover, it is evident that the sole purpose of the vesting orders was to defeat the efforts of the original shareholders of the company to secure a return of the property which had been erroneously taken from them by the Alien Property Custodian in this country. It may well be said that a duty rested upon the United States under the circumstances to return the property to the owners from whom it had been taken, and it is doubtful whether the public policy of the United States favors the extending of aid at this time to a foreign government while virtually attempting to seize alleged enemy-owned property in this country under its war legislation. See Settlement of War Claims Act of 1928 (70th Cong. pt. 1, chap. 167 [45 Stat. 254]). In Ingenohl v. Olson & Co., 273 U. S. 541, 47 S. Ct. 451, 71 L. Ed. 762, it is held that the Alien Property Custodian, under the Trading with the Enemy Act (50 USCA appendix § 1 et seq.), had no power to transfer trade-mark rights in a foreign country contrary to the foreign law. It is said by Mr. Justice Holmes, speaking for the court in that case:

"If the Alien Property Custodian purported to convey rights in English territory valid as against those whom the English law protects he exceeded the powers that were or could be given * * * him by the United States. * * *

"Of course a foreign state might accept the Custodian's transfer as good within its jurisdiction, if there were no opposing local interest or right, * * * but no principle requires the transfer to be given effect outside of the United States. * ° * "

Various exceptions were taken by the liquidators to rulings of the lower court, one of which relates to an order of the trial court denying a motion to reopen the case and hear additional testimony. We find no error, however, in any of the rulings below, and we affirm both of the decrees appealed from, with costs.