MILLER, Alien Property Custodian, et al. v. SCHUTTE et al.

(Court of Appeals of District of Columbia.  Submitted December 15, 1922.
Decided February 5, 1923.  Rehearing Denied February 24, 1923.)

No. 3844.

1. War ⬤⟳12—Alien Property Custodian can seize property belonging to deceased alien enemy.

Under Trading with the Enemy Act, § 9, the Alien Property Custodian had authority to seize corporate stock standing on the books of the corporation in the name of an alien enemy, though the latter had died, and before war was declared, where his estate had not yet been settled, and the property had not come into the possession of his heirs.

2. War ⬤⟳12—Administrator cannot recover property from Custodian, if deceased could not.

Under Trading with the Enemy Act, § 9 (d), providing that the legal representative of a deceased person, who would have been entitled, if living, to the return of his money, may proceed for the return of the money as provided in subsection (a) thereof, but that the President or the court might impose conditions to insure the return to the Custodian of any portion of the money which would be distributable to a person not eligible as claimant under subsections (a) or (c), both of which subsections excluded alien enemies, an administrator cannot recover property belonging to his estate from the Alien Property Custodian, if decedent was an alien enemy, so as not to be entitled himself to recover it.

3. War ⬤⟳12—Administrator held not entitled in equity to return of property by Custodian.

Where seven of the eight heirs of decedent were concededly alien enemies and the eighth, who was administrator, was a citizen of Germany though residing in this country, and there were no debts owing by decedent in this country, and the Alien Property Custodian was authorized to pay taxes levied against him, and no person who was not an alien enemy was making any claim to the property, the administrator was not entitled in equity to recover the property from the Alien Property Custodian, even if such recovery were not prohibited by the statute.

Appeal from the Supreme Court of the District of Columbia.

Suit by Frederick Schutte, as administrator of the estate of Carl Schutte, deceased, and by Fritz Schutte, individually, against Thomas W. Miller, as Alien Property Custodian, and Frank White, as Treasurer, of the United States.  Decree for plaintiffs, and defendants appeal.  Reversed and remanded.

Peyton Gordon and Dean H. Stanley, all of Washington, D. C., for appellants.

John Wilson Brown, 3d, and Alfred K. Neppert, both of Washington, D. C., for appellees.

Before VAN ORSDEL, Associate Justice, and SMITH and MARTIN, Judges of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice.  In this case a bill of complaint was filed in the Supreme Court of the District of Columbia, the plaintiffs being Frederick Schutte, as administrator of the estate

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of Carl Schutte, deceased, and Fritz Schutte. These names, however, apply to the same person, who sues in both a representative and individual capacity. The defendants are the Alien Property Custodian and the Treasurer of the United States, and the suit is brought to recover certain property now in their custody under the law known as the Trading with the Enemy Act.

It appears that Carl Schutte was a citizen and resident of Germany, and died in that country about two months before war was declared between the United States and Germany. At the time of his death he was the owner of 1,850 shares of the capital stock of the Standard Oil Company of New Jersey, represented by certificate No. 18870. For a number of years the certificate had been left for safe keeping at the company's office in this country subject to the owner's orders, and it remained there at the time of his death.

The decedent left a widow and seven children surviving him, of whom the plaintiff is one. All of these were citizens and residents of Germany except the plaintiff, who although a German citizen actually resided in the state of New York. The decedent had not been in this country for more than 50 years preceding his death. He had no creditors in this country, and owned no property here, except the shares of stock now in question. He possessed an estate in Germany, which apparently came into the hands of the family there.

On August 7, 1918, the Alien Property Custodian determined that Carl Schutte was an alien enemy under the statute, and the stock aforesaid was accordingly taken over by the custodian, and is still retained by him together with certain dividends since paid upon it. On July 5, 1919, the plaintiff was appointed by the surrogate of the county of New York as administrator of the estate of the decedent, and on December 14, 1921, he filed the present bill of complaint for the recovery of the aforesaid property. He claims individually to be the owner of one-eighth of it as an heir of the decedent, and as administrator he claims possession of the entire property as assets of the decedent's estate. The defendants contest both claims.

Upon a trial of the case the Supreme Court held against the claim of the plaintiff as an individual, and decreed that as to that claim the bill of complaint should be, and the same was, dismissed. No exception was taken by the plaintiff to that decree, nor did he appeal from it; accordingly the claim of the plaintiff as an individual is not involved in this appeal.

But the court sustained the claim of plaintiff as administrator, and decreed that the defendants should forthwith transfer said property to the plaintiff as administrator aforesaid, upon the condition nevertheless that plaintiff should enter into an approved bond in the sum of $1,350,000, in favor of said defendants, conditioned upon the return to them "after due administration of the estate of Carl Schutte has been had, of such portion of the aforesaid stock and dividends accrued thereon as shall be determined by the Surrogate's Court, county of New York, state of New York, to be distributable to persons who, at the date of the signing of this decree, are enemies as defined by the Trading with the Enemy Act as amended."

The defendants appealed from the decree. The appeal accordingly raises the question whether the plaintiff as administrator aforesaid was entitled to recover the entire property in question from the Alien Property Custodian, upon the condition nevertheless that he should first file a bond as provided by the decree of the trial court.

Under the law known as the Trading with the Enemy Act, 40 Stat. 411, as amended Id. 1020, it was enacted that any money or other property, choses in action, and rights and claims of every character and description owing or belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy, which the President after investigation should determine to be so owing or so belonging or so held, should be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian, to be administered and disposed of as provided in the act. An alien enemy was defined to be, among others, any individual residing within the territory of any nation then at war with the United States, and also such other individuals as may be natives, citizens, or subjects of any nation with which the United States was at war, as the President might by proclamation include within the term. Afterwards by executive order the power of determination aforesaid was invested by the President in the Alien Property Custodian.

The act further provided that any person not an enemy, or ally of enemy, claiming any interest, right, or title in any money or other property which may have been delivered to the Alien Property Custodian thereunder, or to whom any debt may be owing from an enemy, or ally of enemy, whose property or any part thereof shall have been delivered to the Alien Property Custodian thereunder, may within a prescribed time institute a suit in equity, making the Alien Property Custodian and the Treasurer of the United States defendants, to establish the interest, right, title, or debt, so claimed. Under a later amendment, 41 Stat. 977, authority was given to the President to return to certain classes of persons who fell within the definition of the word "enemy," all such property as may have been taken from them by the Alien Property Custodian under the act as theretofore provided. These classes included certain citizens of friendly nations, certain women intermarried with citizens of Germany or Austria, certain diplomatic or consular officers of enemy nations, and other classes who had come literally within the term "enemy," but whom Congress wished to relieve from that disqualification. One of the subsections of that amendment reads as follows:

9 (d) "Whenever a person, deceased, would have been entitled, if living, to the return of his money or other property hereunder, then his legal representative may proceed for the return of such property as provided in subsection (a) hereof: Provided, however, that the President or the court, as the case may be, before granting such relief shall impose such conditions by way of security or otherwise, as the President or the court, respectively, shall deem sufficient to insure that such legal representative will redeliver to the Alien Property Custodian such portion of the money or other property so received by him as shall be distributable to any person not eligible as a claimant under subsections (a) or (c) hereof."

The first question for determination is whether the seizure of the stock by the Custodian was authorized by the terms of the Act. The

claimant, in his brief filed in this court, makes the following concession upon this point, to wit:

"The appellees concede for the purpose of this argument the validity of the Custodian's seizure of the property in controversy, and that the intent of the Trading with the Enemy Act is to permit no recovery under section 9 for the benefit of enemies, and that the sole remedy of Schutte lies under said section 9."

[1] We think that the seizure was regular and lawful. It is true that Carl Schutte had died before war was declared, but his estate had not yet been settled, nor had this property come into the possession of his heirs. The stock certificate still stood in his name, and was yet held by the bailee with whom he had left it subject to his orders. Accordingly within the purview of the Act it was held for, on account of, or on behalf of, the decedent, and by virtue of his title and disposition. It was therefore liable to seizure as enemy property notwithstanding the fact that Carl Schutte was deceased. Congress intended by the act to prevent the removal of enemy-owned property from this country to be added to the resources of enemy countries. That purpose would be defeated pro tanto if the property of a deceased person could be thus removed to an enemy country by his administrator. The act therefore plainly contemplated the seizure and detention by the Custodian of enemy property found in this country even though the foreign owner was deceased. This conclusion is authorized by section 9 (d) of the act, above copied, wherein Congress made express provision for the return to certain limited classes of administrators of property owned by their decedents and held as enemy property by the Custodian. The determination by the Custodian in this instance, therefore, was lawful, and was also consistent with executive practice.

[2] The next question is whether the plaintiff as administrator is entitled to a return of the stock to be administered upon by him, notwithstanding the conceded validity of its seizure by the Custodian. It is difficult to understand this claim, since nothing has taken place since the seizure to alter the status of the property in this relation. It should be noted furthermore that the act specifically provides for the return to certain administrators of the property of their decedents when held by the Custodian, but the provision is expressly limited to cases wherein the deceased persons would have been entitled, if living, to a return thereof. Section 9 (d), supra. It is furthermore prescribed by that provision that, in case of such a return of property to an administrator, he shall be required to give security for the redelivery to the Custodian of such portion thereof as would otherwise be distributable to an alien enemy. This provision is not limited in application to sections 9 (b) and (c) of the act, as contended by the appellee, but applies to section 9 (a) as well. The act thus, by clear implication, forbids the return of property to an administrator in a case like this, wherein the deceased person would not be entitled, if living, to a return of it. Accordingly the act contains no provision for taking security from an administrator of a decedent of this class for a redelivery to the Custodian of such portion there-

of as would otherwise be distributable to alien enemies. The absence of such a provision in relation to the property of decedents who could not, if living, demand a return thereof, can only be explained upon the interpretation that no return under such circumstances is allowed by the act. It is true that in this case the lower court required such a bond from the plaintiff, but that action was wholly voluntary upon the part of the court, and was entirely outside of the act. For under the terms of the act, if the plaintiff as administrator is entitled to a return of the property, his right thereto is unrestricted either as to the redelivery of any part of the property to the Custodian, or as to a bond to secure the same. The fact that the plaintiff made no objection to the requirement in the present instance, is immaterial in this respect.

These considerations lead to the conclusion that the plaintiff as administrator is not entitled to a return of the property in question, since manifestly Carl Schutte would not have been entitled, if living, to a return thereof.

[3] It is proper to note here that seven of the eight heirs of Carl Schutte were concededly alien enemies; that the plaintiff was a citizen of Germany although residing in the state of New York; that there were no debts owing by Carl Schutte in this country; that he had no other property here. It may also be noted that the Custodian was authorized to pay out of the funds in his hands any taxes which were lawfully assessed by any body politic against the property thus held by him. 40 Stat. 646. And furthermore under section 9 (a) of the act, any person not an enemy or ally of enemy, claiming any interest, right, or title in the property, or to whom any debt was owing from the decedent, could claim adequate relief from the Custodian. Under such circumstances a claim made by the administrator for the delivery to him of the entire property should not be sustained in equity, even if it were not forbidden by the act.

Accordingly the decree of the Supreme Court is reversed at the cost of the appellee, and the case is remanded for such proceedings as may not be inconsistent with this decision.

Petition for allowance of appeal to the United States Supreme Court granted April 28, 1923.