**FROELICH & KUTTNER, OF MANILA, P. I., v. SUTHERLAND, Alien Property Custodian, et al.**

Court of Appeals of District of Columbia.

Submitted October 10, 1927. Decided November 7, 1927.

No. 4565.

I. Corporations ⟁1—Partnership ⟁1, 349 —Under Philippine statutes, general partnerships, limited partnerships, and corporations are distinct commercial organizations (Philippine Code of Commerce, arts. 122, 125–127, 129, 140, 145–148, 153, 154, 222).

Under Philippine Code of Commerce, arts. 122, 125–127, 129, 140, 145–148, 153, 154, 222, general partnerships, limited partnerships, and corporations are distinctly different commercial organizations; a corporation not being a partnership, nor a partnership, general or limited, a corporation.

2. Partnership ⟁63—Under Philippine statutes, "partnership" is juridical person, but not distinct entity, and property thereof belongs to partners, not to artificial entity (Phillippine Code of Commerce, arts. 122, 125–127, 129, 140, 145–148, 153, 154, 222; Philippine Civ. Code, art. 1675).

Under Philippine Code of Commerce, arts. 122, 125–127, 129, 140, 145–148, 153, 154, 222, and Philippine Civ. Code, art. 1675, a "partnership" is a juridical person, in the sense that it may sue or be sued in the partnership name; but it has no actual personality, separate and distinct from the persons composing it, and its property belongs to the partners and not to an artificial entity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partnership.]

3. Corporations ⟁1—Under Philippine statutes, "corporation" is juridical person, having personality wholly distinct from persons organizing it (Philippine Code of Commerce, arts. 122, 125–127, 129, 140, 145–148, 153, 154, 222; Philippine Civ. Code, art. 1675).

Under Philippine Code of Commerce, arts. 122, 125–127, 129, 140, 145–148, 153, 154, 222, and Philippine Civ. Code, art. 1675, "a corporation," like a partnership, is a juridical person, and may sue and be sued in its own name; but it has a personality wholly distinct and different from that of those who organized it and constitute its membership.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Corporation.]

4. War ⟁12—Philippine partnership, composed of German citizens, held not in effect Philippine corporation, as affecting validity of seizure of partnership property by Alien Property Custodian (Trading with the Enemy Act [Comp. St. §§ 3115½a–3115½j]).

Philippine partnership, composed of German citizens, *held* not in effect a Philippine corporation, the title to whose property was in a distinct legal entity apart from its members, as affecting validity of seizure by Alien Property Custodian, under Trading with the Enemy Act (Comp. St. §§ 3115½a–3115½j).

5. War ⟁12—Philippine partnership, composed of German citizens, held not association having personality distinct from partners, as affecting validity of seizure by Alien Property Custodian (Philippine Code of Commerce, arts. 122, 125–127, 129, 140, 145–148, 153, 154, 222; Phillippine Civ. Code, art. 1675).

Under Philippine Code of Commerce, arts. 122, 125–127, 129, 140, 145–148, 153, 154, 222, and Philippine Civ. Code, art. 1675, Philippine partnership, composed of German citizens, *held* not an association having an actual personality separate and distinct from the partners composing it, as affecting validity of seizure of its property by Alien Property Custodian.

Appeal from the Supreme Court of the District of Columbia.

Action by Froelich & Kuttner, of Manila, Philippine Islands, against Howard Sutherland, Alien Property Custodian, and another. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

G. S. Ward and E. N. Cherrington, both of Washington, D. C., for appellants.

D. H. Stanley, of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District of Columbia dismissing appellants' bill, filed under the provisions of section 9 (a) of the Trading with the Enemy Act (40 Stat. 411), as amended March 4, 1923, 42 Stat. 1511 (Comp. St. § 3115½e) to secure the release from the Alien Property Custodian and the Treasurer of the United States of approximately $617,000, seized by the Custodian as enemy property.

Acting Associate Justice Smith, a Judge of the United States Court of Customs Appeals, who heard the case below, has written a comprehensive and satisfactory opinion, dealing with both the facts and the law. That opinion we adopt, as follows:

"On the 20th day of May, 1890, at the city of Manila, Adolph Froelich and Ludovico Kuttner & Danziger entered into an agreement in which they agreed to organize, under the firm name of Froelich & Kuttner, an ordinary mercantile partnership for the wholesale and retail sale and importation of merchandise. The agreement fixed the domicile of the partnership at the city of Manila and gave to Kuttner the management and administration of the partnership, with power to sign the firm name and to engage in such mercantile transactions and speculations as he might deem advisable for the best interests of the partnership. It was agreed that the partnership was to last for four years from the 1st of June, 1890, with the reservation that it might be dissolved or extended by mutual agreement. The capital of the partnership was goods valued at 50,000 pesos, one-half of which amount was contributed by each of the partners. *The partnership agreement specified that the profits and losses were to be divided between the partners, share and share alike.* In case either of the partners died before the termination of the partnership, *the heirs or legal representatives of the deceased partner might, by agreement with the surviving partner, continue the partnership; the partnership to be dissolved and liquidated in case no such agreement was reached.* The partnership was registered in Berlin, Germany, and also in the Philippine Islands.

"Froelich died in 1894, and the partnership, in so far as Germany was concerned, was converted into a 'Komandite' or 'sleeping partnership'"; Kuttner continuing as the active partner and the estate of Adolph Froelich as the 'sleeping partner.' In 1899 Edward Arnhold, then located at Manchester, England, *purchased the interest of the heirs of Froelich in the partnership* and Kuttner and Arnhold, both German citizens, continued the business of the concern as partners. The new partnership was registered in Berlin on January 9, 1900, as an open trading company, with a branch establishment at Manila.

"After the United States entered into war against Germany, the Alien Property Custodian seized the assets of the new partnership in the Philippine Islands and, after liquidating them, paid the proceeds, amounting approximately to $600,000, into the Treasury of the United States.

"On this state of facts, the plaintiff contends, first, that the partners had no beneficial, equitable title whatever in the assets of the partnership; second, that under the laws of the Philippine Islands the assets seized by the Alien Property Custodian were owned by a Philippine corporation, and were, therefore, not subject to seizure as the property of an alien enemy.

"The defendants on their part argue that the equitable title to the assets seized was vested in the partners, and that, therefore, it was enemy-owned and subject to seizure.

"The Code of Commerce of the Philippine Islands provides for three classes of business organizations; that is to say, general partnerships, limited partnerships, and corporations. A general partnership is a business organization in which all the partners, under a collective and commercial name, bind themselves to participate in rights and obligations in the proportion which may be agreed upon. Article 122, Philippine Code of Commerce. The articles of the general partnership must state (1) the names, surnames, and domiciles of the partners; (2) the firm name; (3) the names and surnames of the partners to whom the management of the firm and the use of its signature is intrusted; (4) the capital which each partner contributes in cash, credits, or property, and the value given to the property or the basis on which its appraisement is made; (5) the duration of the partnership; (6) the amounts which * * * are to be given to each managing partner annually for his private expenses. Article 125, Philippine Code of Commerce. The general partnership must transact business under the name of all its members, but it may be transacted in the name of several of them, or of one only, if the words 'and company' be added to the partnership designation. Article 126, Philippine Code of Com-

merce. All the members of a general partnership are *personally* and *jointly liable* with all their property for the results of the transactions made in the name or for the account of the partnership. Article 127, Philippine Code of Commerce. All of the partners have the right to take part in the direction and management of the partnership business unless the management of the business be confined by the articles of partnership to one or more of the partners. Article 129, Philippine Code of Commerce. If not otherwise provided by the articles of partnership, profits and losses sustained by the partnership must be divided among the partners in proportion to the capital contributed, partners not contributing any capital to share proceeds and sustain losses in the amount apportioned to the partner contributing the smallest capital. Article 140, Philippine Code of Commerce.

"Articles of limited partnership must contain the statements prescribed for articles of general partnership. Article 145, Philippine Code of Commerce. Limited partnerships must transact business in the names of all the active partners, but it can be transacted in the names of some of them or in the name of one of them, if the words 'and company' be added to the partnership designation, The names of special partners cannot be included in the limited partnership name and the words 'limited copartnership' must constitute a part thereof. Articles 146 and 147, Philippine Code of Commerce. Special partners are liable only for that proportion of losses which the capital contributed by them bears to the whole capital, unless their names are included in the partnership designation, in which event they acquire no additional right, but subject themselves to the liabilities of active partners. Special partners take no part whatever in the management of the partnership, whether as special agents or otherwise. Articles 147 and 148, Philippine Code of Commerce. General and limited partnerships are dissolved by the death or insolvency of a general partner or by the insanity of a managing partner. Article 222, Philippine Code of Commerce.

"Corporations are formed by means of articles of incorporation, which must contain (1) the names, surnames, and domiciles of the incorporators; (2) the name of the corporation; (3) the designation of the person or persons who are to direct the affairs of the corporation and the manner of filling vacancies; (4) the corporation capital, stating the value at which property, not cash, contributed has been appraised; (5) the number of shares into which the corporate capital is divided; (6) the time within which the capital not subscribed on incorporation is to be paid, et cetera; (7) the time during which the corporation is to continue in existence; (8) the transactions for which the capital may be used; (9) the time and manner of calling and holding general and extraordinary meetings of members; (10) a provision which permits the members to vote on any matter which may be brought before them at any meeting duly called and held; (11) a provision declaring what constitutes a majority of votes for the adoption of any resolution, and the manner of counting votes at any meeting. Article 151, Philippine Code of Commerce. *The liability of members of a corporation for losses is limited to the funds they contributed or bound themselves to contribute to the corporate capital.* The corporate capital and proceeds are liable for the obligations contracted by the corporation. Articles 153 and 154, Philippine Code of Commerce. The managers of the corporation are its agents, and are not subject to personal or joint liability on account of corporate business, so long as they do not violate the lawful resolutions adopted by the members at general meetings. Article 156, Philippine Code of Commerce.

[1] "It is apparent from a careful examination of the cited provisions of the Philippine Code of Commerce that general partnerships, limited partnerships, and corporations are distinctly different commercial organizations, and that a corporation is not a partnership, and that partnerships, whether general or limited, are not corporations.

[2] "In general and limited partnerships, partners share profits and losses as prescribed by the articles of partnership and by the provisions of the Philippine Code of Commerce governing such commercial organizations. A partnership is a juridical person, in the sense that it may sue or be sued in the partnership name; but it has no actual personality separate and distinct from the persons who compose it. The capital and property of the partnership belong to the partners, actual, existing human beings, and not to an artificial entity. Article 1675, Philippine Civil Code; Prautch, Scholes & Co. v. Hernandez, 1 Phil. Rep. 705. The affairs of a partnership are controlled by the active partners, and, except as limited by the articles of partnership and by the Code of Commerce, each active partner has an *equal* voice in determining the business policy of the concern.

[3] "A corporation, like a partnership, is

also a juridical person, and may sue and be sued in its own name; but it has a personality wholly distinct and different from that of those who organized it and constitute its membership. Those who organized or compose it may all die, and it continues to exist as a legal entity until dissolved as prescribed by law. The capital of a corporation, once contributed, does not belong to its membership, but to the corporation, a legal entity gifted by law with a personality of its own, as distinctly different from that of those who organized it or directly or indirectly manage it as is the personality of the child from that of its parents. The liability of corporate shareholders is not that of active partners, but is expressly limited to the funds they contributed or bound themselves to contribute to the corporate capital. In a business corporation, the shareholders have not an equal voice in the management of its affairs. Its directorate is not elected, and its business policy is not controlled, by a majority of shareholders, but by a majority of the shares, or by such voting strength thereof as may be specified in the articles of incorporation. A shareholder owning 10 shares of stock of a business corporation is not the equal of a shareholder owning 1,000 shares, and whether a resolution is carried or lost at a stockholders' meeting is determined, not by the number of shareholders, but by the number of shares voting for or against it.

"To sustain the contention of the plaintiff in this case would virtually do away with the distinction which the Philippine Code of Commerce makes between partnerships and corporations, and result in holding that in the Philippines general and special partnerships are corporations. The court is not prepared to go that far, and must rule that in the Philippines, as in the United States, business partnerships and business corporations differ radically as to property rights, division of profits, liability for losses, survival, and the continuance of their existence. [4] "The court finds, first, that the firm of Froelich & Kuttner is a partnership, and not a corporation; second, that the title to the capital, assets, and property of said partnership is vested in its members, and not in a legal entity which had a personality different from such membership; third, that as the right to the assets of Froelich & Kuttner was vested in the members of the firm, such assets were subject to seizure under the provisions of the Trading with the Enemy Act." Comp. St. §§ 3115½a–3115½j.

[5] Counsel for appellant, in their brief, insist that:

"The court below erred in stating that the plaintiff contended that it was a 'Philippine corporation.' Plaintiff made no such contention. Plaintiff maintains that it is (1) a 'nonenemy person' under the Trading with the Enemy Act, and entitled to the return of its property; (2) a 'person' under the Philippine statutes and decisions, a legal entity separate and apart from its members. * * * It is, therefore, not necessary for the aggrieved party to prove that it is an individual or a corporation; it may prove that it has been created an 'association' under the law of its creation, and, if such 'association' under the law possesses a personality of its own, it comes within the class entitled, by the provisions of the Trading with the Enemy Act, to the return of its property."

In our view, the provision in the Philippine Code, authorizing a copartnership to act under a collective and commercial name, is procedural in character and relates to form rather than substance. As observed by the learned court below, such a partnership "has no actual personality separate and distinct from the persons who compose it." In Behn, Meyer & Co., 266 U. S. 457, 45 S. Ct. 165, 69 L. Ed. 374, relied upon by appellant, the court was dealing with a corporation having a distinct entity for all purposes. In other words, the court there was dealing with substance and not form. We therefore are constrained to rule that the beneficial interest in the property seized was in the alien enemy partners.

The decree is affirmed, with costs.

Affirmed.