**SORENSON et al. v. SUTHERLAND, Allen Property Custodian, et al.**

District Court, S. D. New York.
Jan. 30, 1939.

Leonard B. Smith and Selden Bacon, both of New York City (Nathan L. Miller and Selden Bacon, both of New York City, of counsel), for Irving Trust Co., executor of Hermann Sielcken.

Sam E. Whitaker, Asst. Atty. Gen., Lamar Hardy, U. S. Atty., of New York City, Francis J. McNamara, Sp. Asst. to Atty. Gen., and Harry LeRoy Jones, Frank C. Sterck, and James A. Shipper, all of Washington, D. C., Attys., Department of Justice (David W. Wainhouse, Asst. U. S. Atty., of New York City, of counsel), for defendants.

GODDARD, District Judge.

This is a motion by the Attorney General of the United States to vacate the final decree entered herein on the 30th day of December, 1929, for the plaintiffs on the ground that the court was without jurisdiction of the suit because it was not a suit cognizable under the provisions of the Trading with the Enemy Act, 50 U.S.C.A. Appendix § 1 et seq., and was not otherwise properly within the jurisdiction of this court.

The suit was against Howard Sutherland, then Alien Property Custodian, and Frank White, then Treasurer of the United States, in their official capacities. The Zentral-Einkaufs-Gesellschaft, m. b. H. (hereinafter referred to as Z. E. G.), a corporation of Berlin, Germany, doing business as an official purchasing agency of the German Government, was also named as a defendant, although no relief was prayed for against it or awarded by the decree; and it appeared and filed an answer and unsuccessfully contested the debt. The suit was brought by the plaintiffs, Sorenson and Nielsen, as the surviving partners of the firm of Crossman & Sielcken, a New York partnership, in 1927, in purported pursuance of section 9(a) of the Trading with the Enemy Act, c. 106, 40 Stat. 411, as amended, 50 U.S.C.A. Appendix § 9(a). The entire capital of that firm was owned by Hermann Sielcken who, up to the time of his death on October 8, 1917, had continuously resided in Germany since March 1914. The suit sought to establish a debt owing to the firm of Crossman & Sielcken from Z. E. G. which was based upon the value of certain cargoes shipped by Crossman & Sielcken from New York to neutral consignees but destined for delivery to Z. E. G. under an agreement made between officials of the German Imperial Government, the firm of Theodor Wille of Hamburg, and Hermann Sielcken, while he was a resident of Germany, and the suit sought to have applied to the payment of the debt the sum, amounting with interest, to some $715,000, which had been seized as enemy property by the Alien Property Custodian under the Act and held by him and the Treasurer of the United States under a Trust No. 592 in the name of Z. E. G.

The suit which resulted in the decree for the plaintiffs for the sum of $716,160.37 on December 30, 1929, was tried in this court. No appeal was taken and the decree was satisfied by the Alien Property Custodian and the Treasurer of the United States. A warrant for satisfaction in the amount of $727,618.93 was executed on April 10, 1930.

On May 1, 1934, pursuant to an Executive Order 6694, the office of Alien Property Custodian was abolished and the authority, rights, powers and duties conferred upon the Alien Property Custodian by law and executive order, were transferred to the Department of Justice to be administered under the supervision of the Attorney General.

Service of motion papers to vacate the decree was made on John S. Sorenson, one of the original plaintiffs herein, and upon the Chase National Bank of the City of New York as Ancillary Executor of the Estate of Thorleif S. B. Nielsen, deceased; but on June 10, 1938, after a hearing before a Judge of this court on an order to show cause why an order should not be entered vacating the service on the said Bank as Ancillary Executor on the ground that it was discharged as such Ancillary Executor in 1934, the Attorney General and the Bank agreed to a discontinuance of the proceedings as to the Chase National Bank, as Ancillary executor of the Estate of Thorleif S. B. Nielsen, deceased, and on June 15, 1938, an order was entered to that effect. Thorleif S. B. Nielsen died in September, 1930, and thereupon John S. Sorenson became the sole surviving member of the former firm of Crossman & Sielcken.

Out of the recovery in said suit, it appears that one-half was directly or indirectly paid to Z. E. G. and $100,000 to the firm of Theodor Wille.

The Government in this proceeding is not questioning the decision of the court on the merits, namely, whether a debt was

or was not owing by Z. E. G. to the firm of Crossman & Sielcken. The original suit was a proceeding in rem and the Z. E. G. was not a necessary party. Koscinski v. White, D.C., 286 F. 211, and the joinder, non-joinder, or the dissolution of Z. E. G., an enemy debtor, does not affect the jurisdiction herein. Spiegelberg v. Garvan, D. C., 260 F. 302.

Counsel for plaintiffs contend that there was no seizure of the property of Hermann Sielcken and could not for the reason that Sielcken died on October 8, 1917, and that the Alien Property Custodian was not appointed until October 22, 1913, and that moreover, the Custodian never made any demand for Sielcken's property or his estate. Insofar as this first contention is concerned, it is firmly established law that the Alien Property Custodian might seize enemy property found within this country, even though the former owner was deceased. Miller v. Schutte, 52 App.D.C. 359, 287 F. 604, appeal dismissed, 263 U.S. 730, 44 S.Ct. 7, 68 L.Ed. 529.

The affidavits with appended documents amply support the conclusion that not only all the right, title and interest of Hermann Sielcken in the liquidation of the partnership of Crossman & Sielcken, but all the right, title and interest of the German executors and of the beneficiaries under the will of Hermann Sielcken, deceased, were seized by the Alien Property Custodian. In support of this conclusion, without discussing the details at length, it is sufficient to refer to the admissions and records of the respondent, Irving Trust Co., the successor of the Columbia Trust Co., including Sterck's affidavits, claim of George E. Warren, Vice-President of Columbia Trust Co., sworn to March 28, 1921; the sworn amendment of March 29, 1921, to claim, the receipt of June 28, 1938, signed by Warren acknowledging that the Trust Company has filed with the Alien Property Custodian " * * * notice of claim against the money and property in the hands of said Custodian or the Treasurer of the United States taken as property of Hermann Sielcken and/or estate of Hermann Sielcken determined by said Custodian to be an enemy * * *"; also the opinion of Mr. Surrogate Foley in In re Sielcken Estate, 167 Misc. 327, 3 N.Y.S.2d 793. The Columbia Trust Co., the corporate predecessor of the respondent, Irving Trust Co., assisted in carrying the seizure into effect under its accepted appointment as agent for the Alien Property Custodian and its designation as depository for the Alien Property Custodian.

Upon seizure of the enemy alien property by the United States under the Trading with the Enemy Act, the enemy owners were divested of every right, title and interest therein. United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 121, and it became the property of the United States. A suit for the recovery of it is a suit against the United States which may only be brought upon the consent of the United States to be sued. Henkels v. Sutherland, 271 U.S. 298, 46 S. Ct. 524, 70 L.Ed. 953, 51 A.L.R. 229. Section 7(c) of the Act, 50 U.S.C.A.Appendix, § 7(c), authorized the seizure of all money or other property held for or by enemies or allies of enemies and provided as follows: " * * * and all property thus acquired shall be held, administered and disposed of as elsewhere provided in this Act".

Section 9 of the Act is the only statutory authority for suits to recover such property, and the pertinent part of it provides: "§ 9. (a) Any person not an enemy or ally of enemy * * * to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require. * * * If the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the

United States or the interest therein to which the court shall determine said claimant is entitled. * * *"

■ A plaintiff whose property was thus seized could not invoke the general equity jurisdiction of the court. His remedy is that provided in section 9, which is exclusive. Crone v. Sutherland, 62 App.D.C. 16, 63 F.2d 895, Court of Appeals, District of Columbia; Sutherland v. Norris, 3 Cir., 24 F.2d 414.

After the termination of the state of war (July 2, 1921) the Congress made available certain remedies to a restricted class enabling them to proceed for the return of their seized property. Section 9 of the Act was amended in 1923, Act of March 4, 1923, 42 Stat. 1511, and in 1928, Act of March 10, 1928, 45 Stat. 254, 50 U.S.C.A.Appendix § 9, the procedural remedies extended to enemies under section 9 were always limited by the Congress to those persons who were "the owners" of the property "at the time such money or other property" was seized by the Alien Property Custodian. Although section 9 was amended so as to allow the bringing of suits by various classes of enemy claimants, the remedy provided for those seeking to establish a debt as in the case at bar, has at all times since the Act remained expressly limited "to any person not an enemy alien or ally of an alien". Section 9 granting consent to sue excludes as a debt claimant any one defined in section 2 of the Act as an "enemy", and this section 2(a), 50 U.S.C.A.Appendix § 2(a), reads as follows: "Any individual, partnership, or other body of individuals, of any nationality, resident within the territory * * * of any nation with which the United States is at war * * *".

Hermann Sielcken, the principal partner and owner of the entire capital of the firm of Crossman & Sielcken, was included within the term "enemy." The allegation in the bill of complaint—and the only one respecting the non-enemy status of the plaintiffs—is: "Second: Said partnership of Crossman & Sielcken at all times has had its principal place of business in the Borough of Manhattan, City, State and Southern District of New York, and has been and is a resident of said Borough of Manhattan, City and State of New York, and has not at any time been a resident within territory (including that occupied by the military and naval forces) of any nation with which the United States was at war and was not, nor at any time has it been, an enemy or ally of enemy within the meaning and purview of those terms as used and defined in the Act of October 6, 1917, known as and herein referred to as the Trading with the Enemy Act, or in any act amendatory thereof and supplemental thereto or in any proclamation or executive order issued by the President of the United States pursuant to subsection (c) of section 2 of the Trading with the Enemy Act."

■ It is true that for some purposes a partnership is treated as an "entity"; but a partnership is not a jurisdic entity. Rossmoore v. Commissioner, 2 Cir., 76 F. 2d 520, and it is fully established that, when citizenship is a necessary jurisdictional allegation in a suit by or against a partnership, this court must consider the diverse citizenship of the several persons composing the partnership or association. Great Southern Fireproof Hotel v. Jones, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842. The rule applies to the Trading with the Enemy Act in which non-enemy status of the individual partner is a jurisdictional condition precedent to the filing of a debt claim and the institution of a suit upon claim. Froelich & Kuttner v. Sutherland, 57 App. D.C. 294, 22 F.2d 870, Court of Appeals, District of Columbia; Waldes v. Basch, 109 Misc. 306, 179 N.Y.S. 713.

■ Accordingly it is clear that under section 9 of the Act, it is the residence of the partners who composed the firm of Crossman & Sielcken which determines whether jurisdiction was conferred upon this court. The fact that the partnership was organized and that it carried on its business in the United States is, of course, immaterial, for if these, and not the residence of the partners, were the controlling factors, the purpose of the Act would be readily evaded. The general rule that it is essential that the right of the plaintiff to institute an action and the jurisdiction of the court shall appear on the face of the bill by positive averment, applies to suits under section 9 of the Trading with the Enemy Act. Garvin v. Kogler, 3 Cir., 272 F. 442.

Section 7(c) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix § 7(c), provides that: "The sole relief and remedy of any person having any claim to any money or other property * * * conveyed * * * to the Alien Property

Custodian * * * shall be that provided by the terms of this Act."

For a plaintiff to be entitled to the relief and remedy under section 9, it must appear that the debt claimant be "not an enemy" and that a debt is owing to such claimant from an enemy whose property has been seized; also (section 9(e) that the debt was owing to and owned by the claimant prior to October 6, 1917. The co-partnership agreement of the partnership of Crossman & Sielcken provides: "Fifth: The capital of the partnership shall consist of all the property and assets of every kind and description belonging to the said Hermann Sielcken, as surviving partner of the late firm of Crossman & Sielcken, or such part thereof as may be used in the business of the partnership now formed, including the goodwill of said firm. The whole of the said capital shall continue to be the property of the said party of the first part, and upon the termination of the partnership from whatever cause, the same shall belong entirely and absolutely, to the party of the first part or to his estate. The parties of the second and third parts shall have no share or title in or to any of the said capital, their only interest in the business consisting of their shares of the net profits that may be realized therefrom."

Upon the declaration of war on April 6, 1917, the partnership of Crossman & Sielcken was dissolved by operation of law. Sutherland v. Mayer, 271 U.S. 272, 284, 46 S.Ct. 538, 70 L.Ed. 943. Hermann Sielcken, the owner of the entire capital of the firm of Crossman & Sielcken, was and had been for several years prior to his death on October 8, 1917, an enemy alien under section 2(a) of the Act.

Another article of the co-partnership provided: "Eleventh: Upon the death of the party of the first part, it shall be the duty of the surviving partners to transfer and pay over to the executor of the will of the deceased partner his capital as above defined and also all the property and business of the firm."

Accordingly, prior to October 8, 1917, when Hermann Sielcken died, Sorenson and Nielsen owned but "an interest in the business consisting of their shares of the net profits that may be realized therefrom" and that all the capital property and business, including as an asset the debt sued upon belonged "entirely and absolutely" to Hermann Sielcken during his lifetime and to his estate upon his death.

The plaintiffs brought the suit allegedly under section 61 of the Partnership Law of New York, which provides that a partnership is not terminated by dissolution but continues until its affairs are wound up. But section 68 of the Partnership Law states that the surviving partners have the right to wind up the affairs of the partnership *only* if it be *not* "otherwise agreed". In this co-partnership agreement it was "otherwise agreed"; and under the express terms of Hermann Sielcken's will, the sole right to liquidate the partnership assets and the property of the firm of Crossman & Sielcken was after his death vested in the executor appointed in his will.

A judgment entered in the Supreme Court for the County of New York on November 11, 1933, upon the Referee's Report submitted in the case of Chase National Bank of the City of New York, as Ancillary Executor of the Last Will and Testament of T. S. B. Nielsen v. John S. Sorenson, Irving Trust Co., as Executor of the Last Will and Testament of Hermann Sielcken, deceased, et al., read:

"Now, on motion of Avery & Whiting, attorneys for the said defendant, Clara Sielcken-Schwarz, it is

"Adjudged that upon the death of said Hermann Sielcken on October 8, 1917, by virtue of the terms of a certain partnership agreement dated June 2nd, 1913 (a copy of which is attached to the complaint herein) between said Sielcken and said John S. Sorenson and said Thorleif S. B. Nielsen and by virtue of the terms of said Sielcken's will dated March 23rd, 1914, and admitted to probate by the Surrogate's Court of the County of New York on the 26th day of January, 1918, the sole right to liquidate the partnership assets and property of the firm of Crossman & Sielcken was vested in the executor named in said will, now said defendant Irving Trust Company, and under the terms of said instruments no other person was lawfully entitled to be such liquidator. It is further

"Adjudged that neither the plaintiff's testator, Thorleif S. B. Nielsen nor said defendant John S. Sorenson is now or at any time since the dissolution of said firm of Crossman & Sielcken by the said death of said Hermann Sielcken on October 8th, 1917 has been a liquidating partner thereof."

On November 8, 1917, the Supreme Court of New York County entered a final judgment in said case.

Respondent contends that "even if the articles (co-partnership agreement) were to be construed as transferring the partnership receivables to the executor so that it alone could properly maintain suit on claims due the partnership in the absence of further agreement, there was in this case, just such an agreement made between the executor and Sorenson and Nielsen. Such an agreement was made by the letter from the executor of June 14, 1918, to the two surviving partners and their acceptance of it, and action under it. However, not only is it apparent from this letter that it was recognized by the surviving partners and Sielcken's executor that the co-partnership agreement vested in Sielcken's executor the sole right to bring suit on claims due the partnership, but moreover, the purported transfer and assignment of that right for the purposes of this suit was void under the Trading with the Enemy Act, sections 7(b) and 9(b); Schrijver v. Sutherland, 57 App.D.C. 214, 19 F.2d 688, Court of Appeals, District of Columbia.

It further appears that whatever interest the plaintiffs were entitled to in accordance with the copartnership agreement was paid to them out of the surplus funds of the partnership, as is evidenced by the settlement entered into by the firm of Crossman & Sielcken in liquidation with each of the plaintiffs on December 23, 1917, and the releases executed by both plaintiffs releasing the firm of Crossman & Sielcken, its successors and assigns, and the members thereof, their heirs and executors from all claims and causes of action. This release included any interest in the debt which the plaintiffs sued upon, for it stated: "In consideration of the receipt of the aforementioned payment, I hereby agree that, should any amount be awarded to me, individually, by any Prize Court or otherwise, on account of goods shipped during the year 1915 and seized by the British Naval Authorities, I will pay all such amounts forthwith to the Columbia Trust Co., as Executors of the Estate of Hermann Sielcken, deceased." Therefore, it is clear that the plaintiffs neither prior nor subsequent to the death of Hermann Sielcken, were the owners of the debt claimed within the terms of the Act, and had no standing to invoke the jurisdiction of this court in this suit brought by them, either as individuals or as the alleged surviving partners of the firm of Crossman & Sielcken.

In my judgment the allegation in the bill, paragraph "Second", as to non-enemy status did not state facts sufficient to confer jurisdiction on this court.

In September, 1917, Sorenson and Nielsen proceeded to liquidate the partnership pursuant to the requirements of the United States War Trade Board. On November 16, 1917, the War Trade Board required them to turn over to the Alien Property Custodian the share of the enemy partner, Hermann Sielcken, in the proceeds of the firm. All the assets of the firm of Crossman & Sielcken were turned over to the Columbia Trust Co. as agent for the Alien Property Custodian by Sorenson and Nielsen. Thereupon the Alien Property Custodian acquired all of the assets of the firm of Crossman & Sielcken, including this and all other choses in action and the plaintiffs were divested of every right, if they had any, in respect to the property so taken and held under the Act. Woodson v. Deutsche, etc., 292 U.S. 449, 54 S.Ct. 804, 78 L.Ed. 1357. While the plaintiffs could not base any claim to the property so seized upon a retained right of ownership in or control over a chose in action or the property seized, they might have filed a claim solely upon a right arising out of the terms of the Act itself if the right existed, for the return to them of this or any other asset seized by the Alien Property Custodian as belonging to the firm of Crossman & Sielcken, or to the estate of Hermann Sielcken. They filed no such claim nor was the asset in question ever returned to them by the Alien Property Custodian.

The Government contends that even if it be assumed that the allegation in the bill to the effect that the partnership was not an enemy, without alleging the non-enemy status of the partners, was sufficient to confer jurisdiction, which it denies, the suit was collusively brought in the names of the plaintiffs for the purpose of creating a suit cognizable under the Act and that such suit is not within the jurisdiction of this court.

The Attorney General on April 4, 1921, allowed a claim filed by the Columbia Trust Co., as Executor of the Estate of Hermann Sielcken, deceased, and ordered the release to the Executor in purported pursuance of section 9 of the Act of all right and interest of the Alien Property Custodian in the interest of Hermann Sielcken in the liquidation of the partnership of Crossman & Sielcken and in the

Estate of Crossman & Sielcken and in the Estate of Hermann Sielcken, deceased. Thereupon, and as a result of this return of all the seized assets, the Executor became vested with the right if a proper claimant under section 9 and if the sole owner of the debt to file a claim on behalf of the firm of Crossman & Sielcken in liquidation; also on behalf of the Hermann Sielcken Estate for the recovery of the debt here concerned and to bring suit upon that claim to establish it under the Act, if possible. Section 9(d) confers upon an executor the same rights which the deceased, if living, would have been entitled to exercise under the Act, but no greater rights. The rights of the executor therefor were limited to those which Hermann Sielcken, if living, would have been entitled to exercise. But a debt claim could be filed under section 9 only by a person "not an enemy", so that the Sielcken Executor, although a party owner of the debt, was not qualified to be a claimant. Miller v. Schutte, 52 App.D.C. 359, 287 F. 604, appeal dismissed, 263 U.S. 730, 44 S.Ct. 7, 68 L.Ed. 529; Garvin v. Kogler, 3 Cir., 272 F. 442.

The debt sued upon was founded upon shipments of merchandise by the firm of Crossman & Sielcken together with Theodor Wille of Hamburg, Germany, an enemy firm, pursuant to an agreement that the merchandise should belong in undivided shares to Crossman & Sielcken and the firm of Theodor Wille. The adventure, consisting of the purchase, shipment and sale of the merchandise abroad was for their joint account. That suit was brought upon the claim for the entire amount by American citizens does not cure the defect in view of the fact of the joint one half ownership in it by the enemy firm of Theodor Wille. And the plaintiffs could not file the claim as Wille's assignee for this was prohibited under sections 7(b) and 9(b) of the Act.

The government contends that the plaintiffs, notwithstanding they knew that Wille, an enemy had a one-half interest in the claim upon which the suit was based, stated under oath that the claim was not filed in collusion with an enemy, thus filed a claim which they were not legally entitled to make and one not cognizable under the Act. On the other hand, the Irving Trust Co., as Executor of Hermann Sielcken, deceased, contends that all claims of Theodor Wille to any interest in any recovery in the suit had been released prior to 1924 by a settlement made by Clara Sielcken Schwarz (widow and residuary legatee of Hermann Sielcken) with the firm of Theodor Wille and the consequent charging off of such claim to profit and loss on the books of Crossman & Sielcken. From this it would appear that Theodor Wille retained his interest in the cargoes from October 6, 1917 until sometime in 1924 and from that time on the chose in action was owned entirely by the Irving Trust Co., as Executor of Hermann Sielcken, which nominated Sorenson & Nielsen to file a debt claim and to bring the suit as surviving partners and sole owners of the debt claim. But Theodor Wille was an enemy and so could neither legally file a claim nor bring suit as a debt claimant, and the Irving Trust Co., as Executor of Sielcken, or Sorenson & Nielsen, as assignees of Wille's claim, were in no better position than Wille himself.

The Government urges that the reason why suit to establish the claimed debt was brought in the name of the plaintiffs instead of the true owners and why the actual ownership of the debt was not disclosed and asserted, and the reason why the suit was brought by parties plaintiff collusively, as the Government charges, was because the Act provided no remedy for the payment of a debt claim to the Executor of Hermann Sielcken, an enemy, and that as the debt sued upon was owned jointly by an enemy firm and the Executor of an enemy, the Act precluded the administrative allowance or the judicial determination of a claim so owned. To support this contention the Government refers to the following testimony of Brainard S. Avery, attorney of record for the plaintiffs in the suit:

"Q. Whose idea was it to bring the suit in the District Court in the names of Sorenson & Nielsen without mentioning the executor or joining the executor as a party? A. I think it was mine.

"Q. What reason had you for proceeding in that way? A. I wanted to make the suit stick.

"Q. What had the omission of the executor from that suit to do with that matter? * * *

"Q. In your judgment? A. At that time, all of 1927, I knew that Mr. Sielcken had died in an enemy country, that under the Trading with the Enemy Act he had an enemy status, that Mr. Sorenson and

Mr. Nielsen had no such obstacles to overcome, the executor not being in any better position than Mr. Sielcken himself. * * *

"Q. At the time you prepared that bill, you were familiar, were you not, both with the articles of copartnership and the will? A. The bill was prepared in the first instance by Mr. Barnes, but we were both familiar with the papers."

The testimony given by the attorney of record for the plaintiffs, Brainard Avery, in Matter of Sielcken, 162 Misc. 54, 293 N.Y.S. 721, is also referred to and his statement—"* * * agreement was that right straight through there should be an even division, even extending to the moneys in possession of the Alien Property Custodian" and the estate "was to take one half and the Germans were to get the other half, or to be released from the other half * * *" (p. 1662, Avery testimony, Ex. T, Sterck. aff.).

It is clear from the foregoing that the controversy involved in the suit in which the plaintiffs obtained the decree, which the Government now seeks to vacate, although nominally between the plaintiffs, as alleged non-enemy surviving partners of the firm of Crossman & Sielcken, and the defendants was actually and substantially a controversy between an executor of an enemy jointly interested with an enemy firm and the defendants; furthermore, it appears that Sorenson and Nielsen were collusively made parties plaintiff for the purpose of "creating a case cognizable" under the Trading with the Enemy Act. A situation comparable with that is the case of Cashman v. Amador, etc., Canal Co., 118 U.S. 58, 6 S.Ct. 926, 928, 30 L.Ed. 72, in which the court said: "* * * the name of Cashman was used with his consent, because the county could not sue in its own name in the circuit court of the United States. The recital shows, in express terms, that the suit was brought for the benefit of the county because it desired to restrain the miners from depositing the debris from their mines in the bed of the river, and it could not sue therefor in its own name in the courts of the United States. * * * From the very beginning the suit was and is in reality the suit of the county, with a party plaintiff 'collusively made,' 'for the purpose of creating a case cognizable' by the circuit court of the United States under the act of March 3, 1875. While, therefore, the 'dispute or controversy' 'involved' is nominally between Cashman, an alien, and the defendants, citizens of California, it is really and substantially between one of the counties of California and citizens of that state, and thus not 'properly within the jurisdiction' of the circuit court." See also Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 16 S.Ct. 307, 40 L.Ed. 444; Farmington v. Pillsbury, 114 U.S. 138, 5 S.Ct. 807, 29 L.Ed. 114; Williams v. Nottawa, 104 U.S. 209, 26 L.Ed. 719; Hawes v. Oakland, 104 U.S. 450, 26 L.Ed. 827.

The actual owners of the claim were not entitled to bring suit under the Act, nor were the nominal plaintiffs in a position to sue upon this claim under the Act.

It is quite true no objection as to jurisdiction was made by counsel for the Government upon the trial, but this could not confer jurisdiction in the face of the express limitations of section 9 of the Trading with the Enemy Act. Banco Mexicano v. Deutsche Bank, 263 U.S. 591, 44 S.Ct. 209, 68 L.Ed. 465; Cummings v. Isenberg, 67 App.D.C. 17, 89 F.2d 489, certiorari denied, 301 U.S. 682, 57 S.Ct. 783, 81 L.Ed. 1341. And consent of the parties may not cure a defect in jurisdiction in violation of the Judiciary Act. Chicago Burlington & Quincy Ry. Co. v. Willard, 220 U.S. 413, 31 S.Ct. 460, 55 L.Ed. 521; Mansfield, Coldwater & Lake Michigan Railway Co. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462. The question of jurisdiction over the parties or the subject matter was not raised at the trial of the case at bar.

This is not an instance of the erroneous or irregular exercise of jurisdiction where the decree might be voidable. It is an instance where the special statute in which the Government has consented to be sued and under which the suit is purported to be brought, definitely limits the jurisdiction of the court to a certain class of litigants. Jurisdiction beyond that class is not conferred on the court and it had no jurisdiction of the case at bar.

■ Although the general rule is that a final decree or judgment may not be vacated after the expiration of the term of the court which rendered it, there is an exception to this rule where it appears that the decree was void for want of jurisdiction. United States v. Ickes, 66 App.D.C. 3, 84 F.2d 257, Court of Appeals, District of Columbia; Clark v. Arizona Mutual Savings & Loan Ass'n, D. C., 217 F. 640;

**54**

Woods Bros. Const. Co. v. Yankton County, 8 Cir., 54 F.2d 304, 81 A.L.R. 300; see also Standard Oil Co. v. Missouri, 224 U.S. 270, at page 281, 32 S.Ct. 406, 56 L.Ed. 760, Ann.Cas.1913D, 936; Windsor v. McVeigh, 93 U.S. 274, at page 282, 23 L.Ed. 914; Reynolds v. Stockton, 140 U.S. 254, at page 268, 11 S.Ct. 773, 35 L. Ed. 464.

 In the case at bar the bill did not allege a case within the jurisdiction of this court; it was not an instance where the court was called upon or did determine the truth of an allegation respecting jurisdiction as in Denver First National Bank v. Klug, 186 U.S. 202, 22 S.Ct. 899, 46 L.Ed. 1127, cited by counsel for respondent. It was a similar situation to that in Vallely v. Northern Fire & Marine Ins. Co., 254 U.S. 348, 41 S.Ct. 116, 65 L.Ed. 297. The want of jurisdiction was apparent on the face of the bill, and since this court had no jurisdiction over the "rem" or over the parties, the decree was void—not merely voidable. Ex parte Rowland, 104 U.S. 604, 26 L.Ed. 861; Phebus v. Search, 9 Cir., 264 F. 407; United States v. Turner, 8 Cir., 47 F.2d 86. A decree that is void because rendered without jurisdiction may be vacated upon motion during the term in which the decree is rendered, or afterwards. United States v. Turner, supra; United States v. Ickes, supra; City of Stuart v. Green, 5 Cir., 91 F.2d 603, 113 A.L.R. 560, certiorari denied, 302 U.S. 744, 58 S.Ct. 146, 82 L.Ed. 575.

The Government refers to Rule 6(c) of the Rules of Civil Procedure which provides that "the expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action which has been pending before it"; but this Rule is not applicable to the case at bar in view of the fact that the decree in question was entered in 1929 and that this proceeding was brought last May—long before the New Rules came into effect.

The Government also contends that the court lacked jurisdiction of the original suit because it was brought in the Southern District of New York instead of the Eastern District of New York, where the plaintiff, Sorenson resided, or New Jersey, where Nielsen resided, or the District of Columbia, in accordance with section 9(a) of the Act, in view of the fact that a partnership, unlike a corporation, is not given the right to institute a suit "where it has

its principal place of business". However, as the motion is disposed of on the grounds discussed above, it is unnecessary to consider this contention.

 The respondent seems to question the right of the Attorney General of the United States to make this motion. But the Attorney General is the representative of the United States in its litigation, and moreover, the Attorney General has since July 1, 1934, when the Alien Property Custodian ceased to exist, become the successor in interest to the Alien Property Custodian. The Government is, of course, interested in the loss of funds which otherwise would have been available for the satisfaction of awards by the Mixed Claims Commissions to American citizens.

I think that the original suit was not properly within the jurisdiction of this court, and the decree entered therein is void. Accordingly, the motion to vacate the decree is granted.