William P. ROGERS, Attorney General of the United States, as Successor to the Alien Property Custodian, Appellant,

v.

Philip J. MARON, Executor of the Estate of C. Hermann Scherf, Deceased, Appellee.

No. 14109.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 23, 1958.

Decided May 22, 1958.

Certiorari Denied Oct. 13, 1958. See 79 S.Ct. 63.

Mr. Irwin A. Seibel, Attorney, Department of Justice, Washington, D. C., with whom Mr. George B. Searls, Attorney, Department of Justice, Washington, D. C., and Mr. John J. Pajak, were on the brief, for appellant.

Miss Hermine Herta Meyer, Washington, D. C., with whom Messrs. Harry W. Blair and Newell Blair, Washington, D. C., were on the brief, for appellee.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This case raises questions relative to "debt claims" by American citizens against alien property seized by the Government. The governing statute is Section 34(a) of the Trading With the Enemy Act, 60 Stat. 925 (1946), 50 U.S. C.A.Appendix § 34(a), which provides in pertinent part:

"No debt claim shall be allowed under this section if it was not due and owing at the time of such vesting * * *. Debt claims allowable hereunder shall include only those of citizens of the United States * * * [and certain others not here involved]. Legal representatives * * * or successors in interest by inheritance, devise, bequest, or operation of law of debt claimants, other than persons who would themselves be disqualified hereunder from allowance of a debt claim, shall be eligible for payment to the same extent as their principals or predecessors would have been."

The facts are briefly these:

From January 13, 1939, until his death in New York State on December 5, 1950, Hermann Scherf (an American) paid his German brother Alexander's premiums on a life insurance policy issued to Alexander by an American insurance company. Hermann's last payment was made on January 16, 1950. The next, and final, payment was made on January 15, 1951, by Hermann's executor, the appellee Maron (an American). Eleven days later the Government vested Alexander's insurance policy, Vesting Order No. 17,256, 16 Fed.Reg. 1492 (1951), and converted it into cash. In August of 1951 Maron filed a claim against the fund, asserting that the cash value of Alexander's policy was available to pay the claim of Hermann's estate against Alexander for premiums paid by Hermann since 1939. Alexander died in 1954, still a German citizen.

Administrative proceedings were held, and Maron's claim (so far as here relevant) was denied. The Government's

ground for denial was that Norman and Pia Scherf, two of Hermann's heirs,[1] are the only persons who would gain from allowing Maron's claim. Being German citizens, they are ineligible under the statutory provisions to take in their own right as claimants against the fund. Interposition of the executor Maron, who merely holds legal title for the benefit of Norman and Pia, does not—so the Government held—give them greater rights than they would have on their own.

Maron sought review in the District Court under Section 34(e) of the Act. On cross motions for summary judgment, the District Court found that Maron was not the debt claimant, but that he was the "legal representative" of the debt claimant, the deceased Hermann. And since Maron was a "legal representative" who was not individually ineligible, the District Court held the claim improperly disallowed. This appeal followed.

The Government argues here that the only person who can be a "debt claimant" within the meaning of the statute is the executor Maron. Status under Section 34 is determined, says the Government, by the situation on January 26, 1951, when the policy was vested. Therefore Maron—not Hermann, who died prior to vesting—is the debt claimant. Hermann was not during his lifetime a "debt claimant," since the policy had not been vested: he was, at best, only a creditor of Alexander.

We think that the Government's construction of "debt claimant"—the person owning the debt at the time of vesting—is correct. It is not only rational and clearly within the statutory terms, but provides for reasonable certainty in administration.[2] Maron virtually concedes as much in his brief, when he states: "If we wish to be technical, then we must admit that a debt claimant under Section 34 is a person who is claiming payment of a debt out of vested property." It is conceded by the Government that Maron is individually an eligible debt claimant within the meaning of the statute.

Under the applicable local law of New York—the place of death, probate and administration—an executor is a mere conduit of the property to the heirs.[3] Maron can stand in no better position than Norman and Pia, who are barred from taking. The policy of Section 9(a) of the Act governing *returns* of vested property is applicable as well to Section 34: the extent of the fiduciary's recovery should be measured in terms of those who will ultimately benefit.[4] But, quite apart from Section 9(a), it would be unsound to hold that the eligibility of the naked titleholder is determinative. It cannot be imagined that Congress intended that, had Pia and Norman been war criminals, Maron could nonetheless have recovered for their benefit in our courts because he was technically an eligible debt claimant.

Reversed and remanded with directions to enter judgment for appellant.

DANAHER, Circuit Judge, (concurring), with whom BURGER, Circuit Judge, joins: I concur in Judge Washington's opinion only because it seems

1. The third heir, Edward Gerhardy, is an American, and the Government concedes he is not barred. His interests are not involved here.

2. Problems may arise involving post-vesting transfers of claims, but they need not be treated here.

3. Blood v. Kane, 1892, 130 N.Y. 514, 29 N.E. 994, 15 L.R.A. 490.

4. See Cordero v. United States, D.C.S.D. N.Y.1953, 111 F.Supp. 556, 558, affirmed sub. nom. Cordero v. Brownell, 2 Cir., 1954, 211 F.2d 90; Public Administra-

tor of New York County v. McGrath, D.C.S.D.N.Y.1952, 104 F.Supp. 834, 836; Central Hanover Bank & Trust Co. v. Markham, D.C.S.D.N.Y.1946, 68 F.Supp. 829, 831. See also Farmers' Loan & Trust Co. v. Hicks, 2 Cir., 9 F.2d 848, 853, certiorari denied 1925, 269 U.S. 583, 46 S.Ct. 120, 70 L.Ed. 424; Kaname Fujino v. Clark, 9 Cir., 172 F.2d 384, certiorari denied 1949, 337 U.S. 937, 69 S.Ct. 1512, 93 L.Ed. 1743; Miller v. Schutte, 52 App.D.C. 359, 287 F. 604, appeal dismissed 1923, 263 U.S. 730, 44 S.Ct. 7, 68 L.Ed. 529.

to be compelled. The law reads just as he says, but I deem the result grossly and inherently unfair. Alexander Scherf in 1927 was issued a policy of life insurance in the amount of $30,000 on which he paid the premiums until 1938 when the foreign exchange laws of Germany precluded his further remittances to the Mutual Life Insurance Company offices in New York. His American brother Hermann, commencing in 1938 paid all premiums until, after his death, the final 1951 premium was paid by the appellee Maron, as executor of Hermann's will. These payments aggregated $11,246.20 and, with interest of $4,-371.13 made up the total of the "debt claim" urged by the executor. Long after the war, on July 29, 1949, this American citizen executed his will in the light of the Custodian's policy, previously announced. The Hearing Examiner's decision points out, relying upon the annual report of the Office of Alien Property for the fiscal year ending June 1947, that "during the fiscal year of the United States Government beginning July 1, 1946 and ending June 30, 1947, it was decided, by agreement between the Department of Justice and the State and Treasury Departments *to refrain from vesting property acquired in the United States* by nationals of Germany or Japan *subsequent to December 31, 1946.*" (Emphasis added.)

The following year, 1947, Hermann Scherf's nephew, Norman, and Hermann's niece, Pia, came to the United States, and ever since have resided either here or in Canada. By his 1949 will, Hermann made provision that his niece Pia "so long as she may be a resident of Canada or the United States" should receive $50 per month during the life of a trust. Other income was to be expended by the trustees "for the support, education and maintenance of my nephew, Norman Scherf, while attending college," and thereafter for a period of five years, Norman was to receive certain income of the trust. I omit other details. Of course, Norman and Pia acquired *no interest* until Hermann's death

on December 5, 1950. The Attorney General's vesting order No. 17256 was executed on January 26, 1951, effective February 12, 1951.

While the executor, a New York attorney and an American by birth, would be an eligible debt claimant in his individual capacity, under New York law as an executor he holds legal title to the debt, but the beneficial interests are owned by those to whom the executor would eventually distribute the proceeds. That there was a debt accruing because of Hermann's payments between 1938 and 1951 seems clear on the record before us. But the statute provides that "debt claims" allowable shall include only those of citizens of the United States (or certain longtime residents of the United States). Thus, since Norman and Pia are not citizens of the United States and were not here resident between 1941 and 1946, they as beneficiaries are ineligible claimants.

This seems to be so notwithstanding the announcement in 1947 by our Government of the policy to refrain from vesting property acquired in the United States by nationals of Germany subsequent to December 31, 1946. Norman and Pia acquired their interest in Hermann's estate at his death on December 5, 1950.

Obviously, it was then too late for Hermann to have made other disposition of his creditor claim as between him and his brother arising because of the payments he had made on his brother's life insurance policy. Had Hermann known that despite the announced policy of the Custodian, his claim would later be vested, he readily, by will, or otherwise, could have made valid arrangements as to his own property, even to the point of carrying out his plans for these very beneficiaries. The Custodian acted two months after Hermann died. It is recited in the vesting order that "The national interest of the United States" required the step. Since Hermann's misplaced reliance upon an officially announced Government position resulted in making beneficiaries of Norman and Pia

**626**

who are ineligible "debt claimants," Hermann's interest or that of his estate becomes forfeited, notwithstanding his loans of thousands of dollars to keep the life insurance policy in force.

That seems to be the law but it does not seem right.

Fahy, Circuit Judge, dissented.