**CORDERO v. UNITED STATES et al.**

United States District Court
S. D. New York.
April 15, 1953.

McManus & Ernst, New York City, Solomon E. Star, New York City, of counsel, for plaintiff.

J. Edward Lumbard, Jr., U. S. Atty., New York City, Paul V. Myron, Deputy Director, Office of Alien Property, Dorchester, Mass., James D. Hill, Chief, Litigation Branch, and Arthur R. Schor, Washington, D. C., Attorney, of counsel, for defendants.

IRVING R. KAUFMAN, District Judge.

The defendants move

(1) to dismiss the action as against the United States of America;

(2) to dismiss the action as against all the defendants upon the ground that the complaint fails to state a claim upon which relief can be granted;

(3) for summary judgment in favor of the defendants upon the ground that the distributees of the estate of Dragoi Batzouroff are ineligible to maintain this action or to claim a return of property; and

(4) for summary judgment in favor of the defendants upon the ground that the action was not commenced within the period prescribed by Section 33, as amended, of the Trading With the Enemy Act, 50 U.S.C.A.Appendix, § 33.

Plaintiff consents to the dismissal of the action as against the United States of

America and on such consent defendants' motion for such dismissal is granted.

As to (2) and (3) above, plaintiff contends that as Administrator, C.T.A. he is the legal owner of the fund in question and as such is entitled to "institute a suit in equity" to establish his title to such fund and need not allege that the beneficiaries are not enemies or allies of an enemy. Section 9(a) of Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 9(a). As to (4) it is the contention of plaintiff that the action is not barred by Section 33 of the Trading with the Enemy Act inasmuch as a claim for the return of the fund involved herein has been pending in the Office of Alien Property and its predecessor since February 23, 1944.

On May 29, 1943, the Alien Property Custodian, pursuant to the provisions of the Trading with the Enemy Act, as amended,[1] issued Vesting Order No. 1583 by which he vested all the property in the United States belonging to Batzouroff & Cie, a Bulgarian partnership, determining that that business entity was an enemy national. At the time the vesting order was issued, the Corn Exchange Bank of New York City, New York, had on deposit property and cash of Batzouroff & Cie valued at $497,438.54. The bank paid over the vested property to the Alien Property Custodian, pursuant to the vesting order.

Dragoi Batzouroff, a Bulgarian national and an alleged member of the Bulgarian partnership, was present in the United States at the time the vesting order was issued. Through his attorneys he filed Claim No. 1737 with the Office of Alien Property on February 24, 1944, in which he alleged, *inter alia,* that he and his brother, Christo Batzouroff, then a Bulgarian national residing in Bulgaria, were the sole owners of Batzouroff & Cie, each possessing a one-half interest in the partnership; and that as a partner physically present in the United States, he was entitled to a return of all the vested property belonging to the firm. After a hearing on his claim held on May 23, 1944, the Vested Property

Claims Committee of the Office of Alien Property Custodian tentatively disallowed this claim on September 15, 1944. In connection with a further hearing, Batzouroff's counsel obtained an adjournment in order to obtain and present new evidence to the Vested Property Claims Committee.

Dragoi Batzouroff died testate in New York County, New York, on June 18, 1945; his will was duly admitted to probate in the Surrogate's Court of New York County and Edward V. Killeen qualified as his executor on August 10, 1945. Approximately two years later, on July 1, 1947, Edward V. Killeen filed an amended Claim No. 1737 limiting his application for relief only to the return of such property as would be necessary to pay the debts of the decedent, Dragoi Batzouroff, in the amounts found by the Surrogate's Court of New York County. Edward V. Killeen at that time asserted no claim for Germaine Buchman who was granted a $25,000 legacy under the decedent's will nor did he assert any claim on behalf of the decedent's brother and three sisters, Bulgarian residents and citizens, all of whom were residuary legatees under the will of the decedent.

The Bulgarian residuary legatees and their successors in interest all filed claims for a return of the vested property with the Office of Alien Property. These claims were prosecuted on their behalf by the Legation of the Peoples Republic of Bulgaria, and were filed on August 9, 1948. The Claims Branch of the Office of Alien Property moved that these claims be dismissed because all these claimants were ineligible for a return under Section 32 of the Act. On December 2, 1948, before any action had been taken on the motion, the claims were withdrawn.

On April 25, 1949, Edward V. Killeen filed an additional Claim No. 42689 on behalf of Germaine Buchman, a Belgian national residing in France. In his claim form the executor stated that all the debts of the estate had been paid or payment therefor provided and that Germaine Buch-

---

1. As of October 6, 1917, 40 Stat. 411, as amended. Hereinafter the Trading with the Enemy Act, as amended, will be referred to as "the Act".

man was the only non-enemy legatee involved in the estate.

On May 23, 1949, the Deputy Director of the Office of Alien Property filed a written determination authorizing payment of the sum of $82,689.27 to Edward V. Killeen pursuant to amended Claim No. 1737; and on August 7, 1950, the Director filed a written determination authorizing the payment of the sum of $25,000 to Edward V. Killeen pursuant to Claim No. 42689 filed on behalf of Germaine Buchman. As of April 30, 1949, Edward V. Killeen had filed no other claim on behalf of any person other than those described in the preceding paragraphs. No claim has been filed since on behalf of the estate or of any of the other legatees or persons interested.

On August 13, 1951, Edward V. Killeen resigned as executor and the plaintiff, Frank M. Cordero, was appointed administrator c. t. a. on August 30, 1951. Approximately one and one-third years thereafter, on December 24, 1952, the plaintiff instituted this suit seeking a return of all the property vested by Vesting Order No. 1583, naming the United States of America, the Attorney General of the United States (hereinafter referred to as the Attorney General) and the Treasurer of the United States as defendants.

■ Plaintiff does not dispute the ineligibility of the beneficiaries to obtain possession of the fund but emphasizes that Dragoi Batzouroff, his testator, being resident in the United States was not within the definition of "enemy" contained in Section 2 of the Act. Plaintiff reasons that since Dragoi Batzouroff was eligible, prior to his death, to seek the return of the vested property, his legal representative who holds title to his testator's personalty until administration is completed, Carroll v. United States, 1871, 13 Wall. 151, 80 U.S. 151, 20 L.Ed. 565, may equally assert this right.

Were the concern of the Trading with the Enemy Act with bare legal title, there would be merit to the plaintiff's theory. However, the language of the Act itself, particularly Sections 5(b) and 7(c), and the judicial interpretations all lead to the conclusion that the status of the beneficial owners is crucial. Kaname Fujino v. Clark, 9 Cir., 1949, 172 F.2d 384, certiorari denied 337 U.S. 937, 69 S.Ct. 1512, 93 L.Ed. 1743. As a fiduciary and nothing more, plaintiff may not recover when the persons to be benefitted by a return of the property are enemies within the Act. Farmers Loan & Trust Co. v. Hicks, 2 Cir., 1925, 9 F.2d 848, certiorari denied 269 U.S. 583, 46 S.Ct. 120, 70 L.Ed. 424; Central Hanover Trust Co. v. Markham, D.C.S.D. N.Y.1946, 68 F.Supp. 829; cf. Miller v. Schutte, 52 App.D.C. 359, 287 F. 604, 608, appeal dismissed 263 U.S. 730, 44 S.Ct. 7, 68 L.Ed. 529.

The government urges with merit that to permit a return of property indirectly to Bulgarian nationals would not only frustrate the purpose of the Act but would also nullify the purpose of Article 25 of the Treaty of Peace between this country and Bulgaria, 61 Stat. 1965, which provides that the property of Bulgarian nationals situated in this country as of September 15, 1947, can be used to satisfy the claims of our Government and our nationals against Bulgaria and its nationals. At the present time all such property is either vested or blocked awaiting appropriate governmental action as to its ultimate disposition. Senate Report 1839, 79th Congress, Second Session, p. 5. But this Court need not go beyond the Act itself and its judicial interpretations, to conclude that plaintiff may not rely on his legal title regardless of his status or his testator's status, where the beneficial owners are enemies within the statutory definition.

Plaintiff urges that the administration of the estate has not been completed and that the return of the fund seized is required for that purpose. The fact that state and federal taxes remain unpaid is relied upon to demonstrate that this return is essential to complete administration of the estate. However, 50 U.S.C.Appendix, § 36 provides that the Alien Property Custodian (and his successor in interest) are to pay all taxes due on vested property including those due at the time of vesting. "Tax" as defined in Section 36(d) includes both income and estate taxes. Furthermore, it appears that

claimant has withdrawn "any claim on account of taxes which may be due from the decedent personally and his estate to the United States and the State of New York, so that such taxes may be paid directly by this Office [of the Alien Property Custodian] to the United States and the State of New York"; Determinations of the Director of the Office of Alien Property, Exhibit 3, p. 2. The fact that the tax remains unpaid therefore has no bearing on the right of the fiduciary for a return of the property.

Plaintiff also points to the pendency of two title claims by George Lueders & Co., Inc., and one Joseph Andreef as preventing a termination of the administration of the estate. Both these claimants have filed title claims with the Office of Alien Property asserting that portions of the vested fund belong to them and not to the decedent. The executor of the Estate of Dragoi Batzouroff, in the statement of his claim, Supplement to Item 12, Exhibit 3, p. 2, stated that the above claims were "against the said vested funds, but not against the Estate of the late Dragoi Batzouroff." As in the case of the tax claims, therefore, it would seem that while these claims are the concern of the Attorney-General they do not affect the administration of the Estate and the return of the fund to the plaintiff is in no way a prerequisite to the settlement of these claims or to the discharge of the adminstrator.

■ It is noted that the State of New York has in past cases invoked Section 269 of the New York Surrogate's Court Act to prohibit the transfer of interests in estates to beneficiaries resident in certain areas of the world. In re Yee Yoke Ban's Estate, 1951, 200 Misc. 499, 107 N.Y.S.2d 221; In re Thomae's Estate, 1951, 199 Misc. 940, 105 N.Y.S.2d 844; Matter of Getream's Estate, 1951, 200 Misc. 543, 107 N.Y.S.2d 225. As was noted by Judge Fuld in Matter of Braier, 305 N.Y. 148, 111 N.E.2d 424, the

"* * * federal regulatory scheme, it is self-evident, serves a purpose entirely unrelated to the goal of the New York provision. The national enactment seeks to 'check * * * trading with the enemy'. * * * Section 269 of the Surrogate's Court Act, in contrast, aims 'to promote the basic object and obligation of Courts of decedent devolution to use their utmost endeavors to effectuate the express or implied wishes of a decedent respecting the disposal of his assets on death.'"

Judge Fuld concluded on this and other grounds that the Trading with the Enemy Act did not pre-empt the field and preclude local legislation. But, accepting this proposition, I cannot see how it aids the plaintiff. As has been stated above, the return of the vested property to the plaintiff is not necessary for the administration of the estate and while both state and federal law may restrict distribution of property to alien legatees, it does not follow that because safeguards are provided under the State law that State law overrides and pre-empts the authority or action of the Federal Government.

My conclusion is that for the reasons set forth this action cannot be maintained and defendants' motion for summary judgment is accordingly granted. This disposition makes it unnecessary to pass on the contentions raised over the alleged untimeliness of this suit. Settle order.